EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Eileen Castro Torres<br>    Demandante<br><br>          v.<br><br> José Antonio Negrón Soto<br>    Demandado<br><br>          v.<br><br>Francisco Rivera Ávila<br>    Interventor-Recurrido<br><br>Procuradora Especial de<br>Relaciones de Familia<br>    Peticionaria | Certiorari<br><br>2003 TSPR 90<br><br>159 DPR _____ |

Número del Caso: CC-2001-983

Fecha: 23 de mayo de 2003

Tribunal de Circuito de Apelaciones:
                    Circuito Regional II

Juez Ponente:
                    Hon. Guillermo Arbona Lago

Oficina del Procurador General de Puerto Rico:
                    Lcda. Lizette Mejías Avilés
                    Procuradora General Auxiliar

Abogada de la Parte Demandada:
                    Lcda. Irma M. Marchand

Abogado de la Parte Interventor-Recurrido:
                    Lcdo. Ángel Antonio Colón


Materia: Alimentos

        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eileen Castro Torres

    Demandante

        vs.

José Antonio Negrón Soto

    Demandado                CC-2001-983    CERTIORARI

        vs.

Francisco Rivera Ávila

    Interventor-Recurrido

Procuradora Especial de
Relaciones de Familia

      Peticionaria

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 23 de mayo de 2003

El 26 de agosto de 1989 la Sra. Eileen Castro Torres y el Sr. Francisco Rivera Ávila contrajeron nupcias, conviviendo hasta finales de 1989, fecha en que Rivera Ávila se trasladó a los Estados Unidos. Inmediato a ello Castro Torres reinició una relación sentimental previa con el Sr. José A. Negrón Soto y el 15 de marzo de 1990, aún vigente su matrimonio con Rivera Ávila, dio a luz un niño. El 20 de marzo del mismo año, Negrón Soto inscribió al niño como hijo suyo en el Registro Demográfico, con el nombre de Julio Ángel Negrón Castro. Dos meses después del nacimiento del menor el matrimonio entre Castro Torres y Rivera Ávila quedó

disuelto mediante sentencia de divorcio instada por Castro Torres, dictada en rebeldía, y notificada a Rivera Ávila vía emplazamiento por edictos.

Así las cosas, el 20 de julio de 1990, Castro Torres radicó ante el Tribunal de Primera Instancia, Sala de Bayamón, una demanda en reclamación de alimentos contra Negrón Soto. En la misma alegó que éste había incumplido su obligación de prestarle alimentos al menor Julio Ángel y solicitó una pensión alimentaria de cuatrocientos dólares ($400.00) mensuales. El 28 de septiembre de 1990 Negrón Soto contestó la demanda y, si bien aceptó que había reconocido al niño, negó que estuviera incumpliendo su obligación. Además, reconvino impugnando su anterior reconocimiento respecto a la paternidad del menor Julio Ángel. Alegó que no era el padre biológico del menor y que el reconocimiento que había hecho era nulo porque a la fecha del nacimiento del niño, Castro Torres estaba casada con Rivera Ávila. Por tal razón sostuvo que, a tenor con la ley, este último era el padre del niño. Iniciado el pleito, el Tribunal de Instancia ordenó que las partes fueran sometidas a pruebas de histocompatibilidad. El resultado de las mismas excluyó a Negrón Soto como padre biológico del menor.

No obstante lo anterior, el 11 de septiembre de 1992 el foro primario resolvió que no procedía la acción de impugnación de reconocimiento ya que la misma había caducado. Negrón Soto solicitó la revisión de tal

resolución ante el Tribunal de Circuito de Apelaciones, el cual denegó la expedición del auto. Posteriormente, Negrón Soto acudió ante este Tribunal mediante petición de certiorari la cual también fue declarada "No Ha Lugar" mediante Resolución emitida el 27 de agosto de 1993. De este modo, la resolución dictada por el Tribunal de Instancia advino final y firme.

Así las cosas, el 25 de marzo de 1998, Castro Torres, en representación de su hijo, solicitó un aumento en la pensión alimentaria fijada con anterioridad a Negrón Soto. El 22 de octubre de 1999 Rivera Ávila presentó una solicitud de intervención en la anterior causa, alegando que tenía interés en la misma por ser el padre biológico del menor. Solicitó que se corrigiera el certificado de nacimiento del menor sustituyendo el nombre del padre, que allí aparece, por el suyo.[1]

---

[1] Resulta pertinente señalar que en la referida moción solicitando intervención Rivera Ávila hizo constar, bajo juramento, que para los meses de marzo a julio de 1989 sostuvo relaciones sexuales con Castro Torres hasta que ésta quedó embarazada; razón por la cual decidieron contraer matrimonio. Manifiesta que, posteriormente, Castro Torres le expresó que el hijo que esperaba no era suyo y que era mejor que se fuera de la casa. A raíz de ese incidente decidió marcharse y el 19 de diciembre de 1989 partió a Nueva York indicándole a Castro Torres la dirección donde iba a vivir para que le comunicara cualquier situación relacionada al embarazo.

Sostiene, además, que a mediados de 1990 y estando en Nueva York llamó por teléfono a la residencia de Castro Torres con el fin de conocer sobre su salud y el progreso del embarazo. Sin embargo, el padre de ésta, quien contestó la llamada, le expresó que no volviera a llamar a su hija. Rivera Ávila encomendó a su madre a que llamara a Castro Torres para conocer de su salud pero tampoco tuvo éxito. Finalmente, Rivera Ávila volvió a llamar a la demandante entre el 16 y el 20 de marzo para saber cómo había salido

(Continúa . . .)

Tras varios incidentes procesales, tanto la Procuradora de la Familia como Castro Torres presentaron, por separado, memorandos de derecho en oposición a la intervención presentada por Rivera Ávila. En esencia, ambas sostuvieron que éste carecía de legitimación activa para instar una acción de impugnación de reconocimiento, y en la alternativa, alegaron que tal acción había caducado. Por su parte, tanto Rivera Ávila[2] como Negrón Soto expresaron su postura mediante respectivos memorandos de derecho.

---

del embarazo. No obstante, la madre de ésta, quien contestó la llamada, le manifestó que su hija había abortado y que pronto le enviarían los papeles del divorcio.

Adujo, además, que no fue sino hasta principios de junio de 1999--al coincidir con Negrón Soto en una actividad-- que advino en conocimiento del nacimiento del niño y que, el mismo, había sido reconocido por éste como hijo suyo. En dicho encuentro Negrón Soto le manifestó, además, que el hijo que tuvo Castro Torres no era suyo por haber sido excluido como padre del menor mediante una prueba de sangre.

A raíz de los eventos reseñados en la referida moción el recurrido se sometió a la prueba de sangre de histocompatibilidad. El resultado concluyó que posee dos de los haplotipos necesarios para ser el padre biológico del menor, equivalente a una probabilidad de más de 95% de paternidad relativa. Fue entonces que decidió presentar la moción solicitando intervención en el referido pleito.

[2] En el Memorando de Derecho presentado por Rivera Ávila éste alega que en virtud de lo establecido en el caso Ramos v. Marrero, 116 D.P.R. 357 (1985) tiene derecho a "probar su paternidad natural y biológica y ataca[r] la presunción de legitimidad del hijo por el reconocimiento voluntario del demandado." Véase Petición de Certiorari, Apéndice XXXIV, Memorando de Derecho, a la pág. 226.

Adujo, además, que su acción no había caducado ya que el término de seis (6) meses dispuesto en el Artículo 117 del Código Civil que comenzó a correr desde que tuvo conocimiento del nacimiento del menor (a principios de junio de 1999), no había trascurrido al momento en que radicó su moción solicitando intervención donde impugnó el reconocimiento hecho por Negrón Soto.

Así las cosas, el 12 de julio de 2001, el foro de instancia emitió una resolución donde declaró "No Ha Lugar" la solicitud de intervención presentada por Rivera Ávila. Al así resolver, sostuvo que la situación planteada por el interventor no estaba tipificada por ningún artículo del Código Civil. Dicho foro manifestó que la ley y la intención legislativa era clara al delimitar las personas que pueden instar una acción impugnando la legitimidad. En virtud de ello determinó que Rivera Ávila no tenía capacidad jurídica para impugnar la paternidad reconocida por Negrón Soto respecto al menor y que, aun en el supuesto de que aplicara el Artículo 117, la acción había caducado.

Inconforme con tal dictamen, el 15 de agosto de 2001 Rivera Ávila acudió --vía certiorari-- ante el Tribunal de Circuito de Apelaciones. Mediante resolución emitida el 27 de septiembre de 2001, archivada en autos el 1 de octubre de 2001, el foro apelativo intermedio le concedió a las partes un término de veinte (20) días para mostrar causa por la cual no se debía expedir el auto solicitado y revocar el dictamen para reconocerle a Rivera Ávila legitimación activa para presentar la acción de impugnación de reconocimiento  dentro del término hábil de 180 días.

En cumplimiento con la mencionada orden, el 18 de octubre de 2001 la Procuradora presentó un "Escrito en Cumplimiento de Orden" en el cual reconoció, que si bien el interventor tenía legitimación activa para presentar una acción de impugnación de reconocimiento, la misma había caducado toda vez que el término aplicable de tres (3)

meses, contados a partir de que el padre registral reconoció al menor, ya había transcurrido. A su vez, el 19 de octubre de 2001, Castro Torres presentó su oposición a la petición de certiorari. Por su parte, Negrón Soto también radicó ante el foro apelativo un escrito en apoyo de la contención del interventor. En la misma enfatizó que no ha existido lazo afectivo alguno entre éste y el menor y que impedir la causa de acción del interventor tiene el efecto de privar al niño de la presencia física de un padre, a la vez que se le oculta su verdadera filiación.

Así las cosas, mediante sentencia emitida el 25 de octubre de 2001, el foro intermedio apelativo <u>revocó</u> la resolución recurrida. Dictaminó que el interventor Rivera tenía legitimación activa para presentar una impugnación de reconocimiento. Ello en vista de que el presunto padre biológico pertenece a uno de los grupos que nuestro ordenamiento jurídico ha reconocido como poseedor de la facultad para ejercitar dicha acción. Determinó, además, que tal acción no había caducado a la fecha en que solicitó su intervención. Al así resolver se apoyó en que el término aplicable era el de seis (6) meses, contados a partir de que el actor, que se encontraba fuera de Puerto Rico, adviniera en conocimiento del nacimiento del menor y la filiación contradictoria en el Registro Demográfico. Insatisfecha con tal dictamen, Castro Torres solicitó reconsideración de dicha sentencia, siendo la misma declarada "No Ha Lugar".

Inconforme con la actuación del tribunal apelativo intermedio, la peticionaria acudió oportunamente --vía certiorari-- ante este Tribunal. Alega que procede revocar la sentencia emitida por el tribunal apelativo debido a que dicho foro incidió al:

> ...determinar que no había caducado la causa de acción del interventor para impugnar el reconocimiento realizado por el padre registral, aun cuando ha [sic] transcurrido más de diez años desde la fecha de tal reconocimiento.

<u>Expedimos</u> el recurso. Contando con la comparecencia de todas las partes, y estando en posición de resolver el recurso radicado, procedemos a así hacerlo. <u>Confirmamos</u>. Veamos por qué.

I

En esencia, la controversia que hoy nos ocupa consiste en determinar si el interventor Rivera Ávila, ex-esposo de la madre del menor y presunto padre biológico del mismo, posee legitimación activa para impugnar el reconocimiento voluntario efectuado en el Registro Demográfico por un tercero. En caso de resolver que existe legitimación activa para ejercitar dicha acción, nos corresponde determinar el término aplicable para llevar a cabo la misma. Estas interrogantes nos llevan a examinar varios aspectos pertinentes al tema de la filiación.

**A. Filiación**

La filiación es el estado civil de la persona, determinado por la situación que, dentro de una familia, le

asigna el haber sido engendrada en ella o el estar en ella en virtud de la adopción o de otro hecho legalmente suficiente al efecto. M. Peña Bernaldo de Quirós, Derecho de familia, Madrid, Sección de Publicaciones, Facultad de Derecho, Universidad Complutense, 1989, págs. 402-03. Consiste inicialmente en una realidad biológica que es posteriormente recogida y regulada por el ordenamiento jurídico el cual distribuye derechos y obligaciones entre padres e hijos. L. Díez-Picazo y A. Gullón, Sistema de derecho civil, 5ta. ed. rev., Madrid, Ed. Tecnos, 1989, Vol. IV, pág. 247. La misma brinda seguridad y publicidad al estado civil de la persona y caracteriza su capacidad de obrar y el ámbito propio de su poder. E. Serna Meroño, La reforma de la filiación, Madrid, Ed. Montecorvo, 1985, pág. 25.

La relación filiatoria se ha catalogado como una fundamentalmente jurídica que para establecerla requiere de una serie de criterios, de los cuales los básicos son los biológicos aunque éstos no siempre entran en acción. L. Díez-Picazo y A. Gullón, ante, a la pág. 249. Es por ello que se ha reconocido a la filiación como una circunstancia que no necesariamente se deriva de un hecho biológico. Ibid. Cónsono con lo anterior, sostiene la Dra. Ruth Ortega-Vélez que "puede darse una filiación biológica, pero no jurídica en aquellos casos en que no conste o no aparezca quiénes son los padres. Es decir, el vínculo biológico no basta por sí mismo para hacer nacer el vínculo jurídico. Puede darse, también, una filiación jurídica que

no sea biológica, . . ." R. Ortega-Vélez, Compendio de derecho de familia, Publicaciones JTS, 2000, T. I, Capítulo VII, pág. 384. Si bien el vínculo biológico no es el único factor al momento de determinar la filiación de una persona, se advierte un nuevo giro en la doctrina legal cuyo objetivo es tratar, en lo posible, de que la realidad biológica coincida con la realidad jurídica.[3] Esto es, que las personas posean una filiación jurídica con aquellos que biológicamente sean sus padres.

No cabe duda de que la determinación de la filiación se caracteriza por lo oscuro de sus problemas y por ser de suprema importancia ya que de ella dependen aspectos esenciales que afectan al ser humano.[4] Su trascendencia no

---

[3] Véase J.L. Lacruz Berdejo y otros, Elementos de derecho civil: derecho de familia, 4ta. ed., Barcelona, Ed. Bosch, 1997, T.4, pág. 424; J. Puig Brutau, Fundamentos de derecho civil, 2da. ed., Barcelona, Ed. Bosch, 1985, T.4, pág. 191; A. Rodríguez Adrados, La filiación en Las reformas del código civil por leyes de 13 de mayo y 7 de julio de 1981,(Conferencia pronunciada ante el Instituto Nacional de Estudios Jurídicos), Madrid, 1983, pág. 121; J.L. Lacruz Berdejo y otros, El nuevo régimen de la familia, Madrid, Ed. Civitas, S.A., 1982, págs. 16-17.

[4] En ese tenor se ha manifestado que:
[D]e ser hijo de tal o cual persona deriva que se tenga una u otra nacionalidad, o una u otra vecindad...cualidades éstas que deciden el régimen de los demás estados de la persona, ya que la capacidad y las relaciones familiares se rige[n] por la ley personal,...aparte de la trascendencia que la determinación de la ley personal tiene en el régimen de otras materias (sucesiones, donaciones, obligaciones...). De la filiación depende directamente además la determinación de las personas que están legitimadas para provocar un cambio de estado civil (emancipación, adopción), o para promover judicialmente el cambio (por incapacitación). La filiación determina, también, las personas a quienes se está sujeto durante la minoría de edad (o en situación de patria potestad prorrogada). Influye la filiación en el poder de la

(Continúa . . .)

sólo se extiende al ámbito moral y patrimonial que afecta a la persona y a su familia, sino que, además, entraña un interés público y superior que interesa también al Estado. J. Castán Tobeñas, Derecho civil español común y foral, 9na. ed. rev, Madrid, Ed. Reus S.A., 1985, T.5, Vol. II, pág. 18. En definitiva, "la filiación es la nota de mayor jerarquía dentro del parentesco y portadora de las más importantes consecuencias jurídicas; . . ." R. Ortega-Vélez, ante, a la pág. 388.

### B.    Filiación Matrimonial y Filiación No Matrimonial

Si bien las reformas en nuestro ordenamiento jurídico han sido escasas en lo concerniente al derecho de filiación, resulta notable el cambio efectuado por la Ley Núm. 17 de 20 de agosto de 1952, 31 L.P.R.A. sec. 441. Dicha pieza legislativa, cónsona con el mandato constitucional que proclama la igualdad de todos ante la ley y prohíbe el discrimen por razón de nacimiento, le otorgó igualdad a todos los hijos.[5] Por tanto, hoy día resulta inadecuado perpetuar la manera discriminatoria y peyorativa en la cual se solían denominar a los hijos,

_____

persona: por la filiación se conoce si una persona tiene herederos forzosos, con la consiguiente trascendencia en relación con la potestad de donar... o de disponer *mortis causa* ...o, en general, con la potestad de gestión del propio patrimonio (por la posible declaración de prodigalidad...). Almodóvar v. Méndez, 125 D.P.R. 218, 233 (1990); citando a M. Peña Bernaldo de Quirós, De la paternidad y filiación, en M. Amorós Guardiola, Comentarios a las reformas del derecho de familia, Madrid, Ed. Tecnos, 1984, Vol. I, pág. 795.

[5] Véase, además Ocasio v. Díaz, 88 D.P.R. 676 (1963).

clasificándolos como legítimos o ilegítimos de acuerdo a las circunstancias de su nacimiento.[6] Actualmente nos referimos a los hijos como matrimoniales o no matrimoniales, siendo trascendente dicha distinción, únicamente, para determinar la filiación y no en cuanto a los efectos. J. Castán Tobeñas, ante, a la pág. 90. Ello en vista de que nuestro ordenamiento le atribuye, tanto a los hijos matrimoniales como a los no matrimoniales iguales derechos, facultades, obligaciones, deberes, incompatibilidades y prohibiciones dentro de la organización familiar y social. Almodóvar v. Méndez, 125 D.P.R. 218, 234 (1990).

Como bien afirman L. Díez-Picazo y A. Gullón: "[e]n un sentido estricto, el hecho biológico de la generación sería la fuente de la relación jurídica de filiación, en otras palabras, es el que la determinaría." *Ibid*. a la pág. 250. Sin embargo, el Código Civil establece distintos criterios respecto a la exigencia de demostrar el hecho biológico, según la filiación sea matrimonial o no matrimonial, puesto que en el primer caso se formulan una serie de presunciones atribuyendo la paternidad del hijo al marido de la madre cuando el nacimiento tiene lugar vigente el matrimonio, cosa que no tiene cabida en la filiación no matrimonial. R. Ruiz Serramalera, ante, a la pág. 202.

---

[6] Igual cambio ocurrió en España--de donde proviene gran parte de nuestro derecho de familia--en virtud de la Ley de 13 de mayo de 1981 que reformó en gran medida el derecho de filiación de dicho país. Véase R. Ruiz Serramalera, Derecho civil: derecho de la persona, Madrid, 1985, págs. 199-200.

En nuestro ordenamiento jurídico coexisten dos situaciones que establecen la filiación de un hijo con su padre. En primer lugar, la del hijo cobijado por una presunción de legitimidad, por haber nacido éste vigente el matrimonio de sus padres; y en segundo lugar, la del hijo no matrimonial. Sánchez Encarnación v. Sánchez Brunet, res. el 13 de julio de 2001, 2001 TSPR 107; Almodóvar v. Méndez, ante, a la pág. 235.

En cuanto a la filiación matrimonial, en los Artículos 113 y 114 del Código Civil,[7] se consignan dos presunciones: (1) "Son hijos legítimos los nacidos después de los ciento ochenta días siguientes a la celebración del matrimonio y antes de los trescientos días siguientes a su disolución."; (2) "Igualmente es legítimo el hijo nacido dentro de los ciento ochenta días siguientes a la celebración del matrimonio, si el marido no impugnare su legitimidad." La filiación matrimonial comprende, además, a los hijos nacidos antes del matrimonio de sus padres. Los Artículos 119 a 122 del Código Civil[8] permiten que el subsiguiente matrimonio de los progenitores convierta la filiación que inicialmente fue extramatrimonial en una matrimonial para todos los efectos y respecto a todas las personas.

En términos generales, la doctrina ha reconocido que los presupuestos legales de la filiación matrimonial son: (1) matrimonio de los padres; (2) concepción o nacimiento

---

[7] 31 L.P.R.A. secs. 461 y 462.

[8] 31 L.P.R.A. secs. 481 a 484.

durante el matrimonio; (3) maternidad o filiación del hijo respecto a la esposa; (4)identidad del hijo con el nacido de la esposa, y (5) paternidad o filiación del hijo respecto al marido. _Calo Morales_ v. _Cartagena Calo_, 129 D.P.R. 102, 122 (1991).[9] Estos presupuestos se comprueban con la inscripción registral del nacimiento y del matrimonio de los padres en el Registro Demográfico. Tal inscripción constituye un título de legitimación del estado civil de hijo matrimonial, sin perjuicio de que pueda ser impugnado judicialmente. R. Ortega-Vélez, ante, a la pág. 391.

De otro lado, tenemos la _filiación no matrimonial_. A diferencia de la anterior, este tipo de filiación, "ni se concibe ni nace dentro de un matrimonio, no es posible jugar con la presunción de paternidad, y por tanto la misma sólo puede acreditarse voluntariamente, cuando él o los padres reconocen al hijo, o, forzosamente, cuando se impone coactivamente ese reconocimiento mediante el ejercicio de la acción judicial correspondiente." L. Martínez-Calcerrada, _El nuevo derecho de familia_, 3ra. ed., Madrid, 1983, T.I, págs. 67-68. Es decir, se refiere al hijo de mujer no casada que nace sin filiación respecto a padre alguno debido a la inexistencia de una persona que pueda ser señalada presuntivamente como padre por la ley.

---

[9] Véase, además, J. Castán Tobeñas, ante, a la pág. 90; D. Espín Canovas, _Manual de derecho de familia_, Revista de derecho privado, Madrid, 1984, pág. 344; L. Lacruz Berdejo y otros, _El nuevo régimen de la familia_, ante, a la pág. 23.

R. Ortega-Vélez, ante, a la pág. 405. Los nacidos bajo esas circunstancias adquieren el estado o condición de hijo cuando el padre en forma afirmativa lo reconoce como tal. *Ibid*.

En esa medida, el reconocimiento voluntario constituye el medio principal y más importante para la determinación de la filiación no matrimonial. Sánchez Encarnación v. Sánchez Brunet, ante. Véase, además, J. Puig Brutau, ante, a la pág. 199. Dicho concepto ha sido definido como un acto jurídico que consiste en la pura y simple afirmación de paternidad o maternidad biológica. El que lo realiza se declara padre o madre del hijo que se trate y le confiere a éste un estado civil y un "status filii" que lo liga al reconocedor. M. Albaladejo, Curso de derecho civil, Barcelona, Ed. Bosch, 1982, T.IV, págs. 227.[10] Este acto se distingue, además, por ser voluntario, individual, personalísimo e irrevocable sin perjuicio de que pueda ser impugnado. R. Ortega-Vélez, ante, a la pág. 408; L. Díez-Picazo y A. Gullón, ante, a la pág. 260.

Si bien existen dos maneras en que se adquiere el estado o condición de hijo --desde el momento mismo del nacimiento o desde el momento del reconocimiento-- no hay duda de que una vez adquirida tal condición se trata de "un mismo y único grupo: hijos." Almodóvar v. Méndez, ante, a la pág. 251. En el caso antes citado acogimos las

---

[10] Véase, además, R. Ortega-Vélez, ante a la pág. 408; E. Serna Meroño, ante a la pág. 239; M. Albaladejo, El reconocimiento de filiación natural, Barcelona, Ed. Bosch, 1954, pág.53.

expresiones emitidas por el Tribunal Supremo de España, en su Sentencia de 25 de junio de 1909, pág. 498, a los efectos de que "el reconocimiento que de su hijo hace un padre natural produce análogos efectos a la presunción de legitimidad de los hijos habidos de matrimonio legalmente celebrado. . . ." En virtud de ello, queda claro que hemos reconocido la existencia de <u>dos presunciones de paternidad con iguales efectos</u>, la que establece el Artículo 113 del Código Civil consistente en suponerlos hijos del marido y la presunción derivada del reconocimiento que los supone hijos del reconocedor. *Ibid*.[11] De este modo, apoyamos la tendencia de ir equiparando, cada vez más, estas dos formas en que se adquiere el estado filiatorio y las acciones que de ellas se derivan.[12]

### C. Acciones Filiatorias

Actualmente nuestro ordenamiento jurídico contempla <u>tres</u> tipos de acciones de filiación. Éstas son: (1) acciones de reclamación, que buscan la afirmación de determinada filiación; (2) acciones de impugnación, que pretenden la negación de determinada filiación y (3) acciones mixtas, que buscan la declaración de determinada

---

[11] Véase, además, M. Albaladejo, <u>El reconocimiento de filiación natural</u>, ante a la pág. 43 donde este autor afirma que "del reconocimiento se deriva una presunción: la de la verdad de la filiación declarada, presunción que es, a su vez, fundamento de la validez del reconocimiento."

[12] En ese sentido se ha reconocido que existe "[u]na notable aproximación en el tratamiento legal de la filiación matrimonial y de la extramatrimonial...hasta el punto de que no pocos aspectos son regulados conjuntamente para una u otra..." J. Lacruz Berdejo y otros, <u>El nuevo régimen de la familia</u>, ante, a la pág. 17.

filiación mientras que, al mismo tiempo, conllevan la negación de otra contradictoria. Sánchez Encarnación v. Sánchez Brunet, ante.[13] Por motivo de la controversia que hoy nos ocupa limitaremos nuestro enfoque a la segunda categoría previamente mencionada.

Hemos reconocido la acción de impugnación de paternidad o legitimidad. Ésta se refiere a la filiación matrimonial, única filiación presumida y determinada por los Artículos 113, 114 y 119 a 124 del Código Civil, ante. Esa presunción de paternidad a favor del marido es controvertible pudiendo presentarse evidencia para refutar o rebatir el hecho presumido. Calo Morales v. Cartagena Calo, ante, a la pág. 117. Precisamente, a través de esta acción se intenta demostrar que no existe en realidad la presunta paternidad del marido. J. Lacruz Berdejo y otros, Elementos de derecho civil: derecho de familia, ante, a la pág. 472. A esos fines la evidencia admisible no se limita a la demostración de la imposibilidad física del marido para tener acceso a su esposa en el periodo crucial, conforme lo establecido en el Artículo 113 del Código Civil, ante. Hemos abierto paso a cualquier otra prueba idónea y concluyente sobre la imposibilidad de la paternidad del marido como lo es la evidencia científica. Rivera Pérez v. León Rallat, 138 D.P.R. 839 (1995); Moreno

---

[13] Véase, además, M. Peña Bernaldo de Quirós, De la paternidad y filiación, en M. Amorós Guardiola, Comentarios a la reforma del derecho de familia, Madrid, Ed. Tecnos, 1984, Vol. I, pág. 946.

Álamo v. Moreno Jiménez, 112 D.P.R. 376 (1982); Ortiz v. Peña, 108 D.P.R. 458 (1979).

Con relación a las personas con capacidad para impugnar la presunción de paternidad del marido resulta pertinente lo preceptuado en el Artículo 116 del Código Civil, 31 L.P.R.A. sec. 481. El mismo establece que sólo el marido y sus herederos legítimos poseen legitimación activa para ejercitar dicha acción. Sin embargo, nuestra jurisprudencia ha ido variando, y con el fin de que "brille la verdad y se reconozca a todos los efectos legales la relación biológica entre padres e hijos",[14] ha reconocido el interés legítimo que ostentan otras personas para llevar a cabo dicha acción. Como consecuencia, poseen legitimación activa para ejercitarla, el marido y sus herederos en circunstancias especiales; el hijo, como consecuencia incidental a la búsqueda de su verdadera filiación; el padre biológico; y la madre, en representación del hijo, cuando éste sea menor de edad. Artículo 116 del Código Civil, ante; Sánchez Encarnación v. Sánchez Brunet, ante; Almodóvar v. Méndez, ante; Ramos v. Marrero, 116 D.P.R. 357 (1985); Robles López v. Guevárez Santos, 109 D.P.R. 563 (1980); Agosto v. Javierre, 77 D.P.R. 471 (1954). Claro está, el fin de brindar estabilidad a las relaciones familiares impide que le confiramos a cualquier persona legitimación activa para ejercitar dicha acción. Por tal

---

[14] Ramos v. Marrero, 116 D.P.R. 357, 358 (1985).

razón, el grupo de personas capacitadas para llevarla a cabo se circunscribe al antes mencionado.

Por otro lado, nuestro ordenamiento jurídico también contempla la procedencia de una acción para impugnar el reconocimiento. Como mencionamos anteriormente, el reconocimiento voluntario tiene espacio cuando se trata de un hijo no cobijado por la presunción de paternidad a favor del marido de su madre, por haber nacido de mujer no casada. En tales casos el reconocimiento voluntario es el mecanismo por excelencia para determinar la filiación de dicha criatura. Sánchez Encarnación v. Sánchez Brunet, ante. Si bien el reconocimiento es un acto "irrevocable", nada impide que el mismo sea impugnado por las personas facultadas para ello. E. Serna Meroño, ante, a la pág. 275-76. La acción para impugnar el mismo tiene como objeto dejar sin efecto una filiación extramatrimonial legalmente establecida. J. Lacruz Berdejo y otros, Elementos de derecho civil: derecho de familia, ante, a la pág. 512.

Históricamente la doctrina española ha distinguido tres tipos de acciones tendentes a conseguir la ineficacia del reconocimiento. M. Peña Bernaldo de Quirós, De la paternidad y filiación, ante, a la pág. 936.[15] Ello, en virtud de que la validez de un reconocimiento depende de que: (1) el reconocido sea hijo natural del reconocedor,

---

[15] Véase M. Peña Bernaldo de Quirós, ante; M. Albaladejo, El reconocimiento de la filiación natural, ante, a la pág. 186-87; E. Serna Meroño, La reforma de la filiación, ante, a la pág. 276; D. Espín Canovas, El nuevo derecho de familia español, Madrid, Ed. Reus, S.A., 1982, pág. 71.

(2) el reconocedor quiera recta y libremente declarar que es su hijo natural y (3) el reconocedor lo declare debidamente siguiendo los requisitos de forma establecidos para ello. M. Albaladejo, *El reconocimiento de la filiación natural*, ante, a la pág. 185.

La primera de estas acciones es la de nulidad absoluta del reconocimiento. G.A. Bossert, *Régimen legal de filiación y patria potestad: Ley 23.264*, 2da. ed., Buenos Aires, Ed. Astrea, 1987, pág. 245; M. Albaladejo, *El reconocimiento de la filiación natural*, ante; M. Peña Bernaldo de Quirós, ante, a la pág. 936. Bajo ésta se considera inexistente el acto del reconocimiento al faltar algún requisito que impida la eficacia del acto jurídico. Por ejemplo, será ineficaz el reconocimiento si está en oposición con un título de legitimación anterior que acredite una filiación contradictoria.[16] M. Peña Bernaldo de Quirós, ante; Bossert, ante, a la pág. 247.

Por otra parte, se encuentran las acciones de impugnación por vicios en el reconocimiento. La misma se refiere a reconocimientos que, en principio, son eficaces y, a la vez, impugnables por adolecer de algún vicio o defecto en la voluntad del reconocedor. M. Peña Bernaldo de Quirós, ante, a la pág. 937, M. Albaladejo, Curso de

---

[16] La ausencia de los siguientes requisitos también hacen ineficaz el reconocimiento: capacidad del autor del reconocimiento, personalidad del reconocido, voluntad del reconocedor y el consentimiento del reconocido o aprobación judicial, o el consentimiento del representante legal o de los descendientes del reconocido ya fallecido. M. Peña Bernaldo de Quirós, ante, a la pág. 936.

derecho civil, ante, a la pág. 261; J. Castán Tobeñas, ante, a la pág. 177. El que impugna bajo este fundamento tiene que demostrar, a satisfacción del tribunal, que el reconocimiento se llevó a cabo mediando error, violencia o intimidación. Sánchez Encarnación v. Sánchez Brunet, ante; Almodóvar v. Méndez, ante, a la pág. 243.[17] Al ejercitar esta clase de acción resulta irrelevante la cuestión de si el reconocido es o no hijo del reconocedor. Esto es, no se cuestiona la verdad de la filiación, ni se ataca el nexo biológico, sino sólo la validez del reconocimiento como título de determinación  legal.[18]

La tercera acción --reconocida por la doctrina española y la cual no ha sido adoptada en nuestro ordenamiento jurídico-- consiste en la impugnación del reconocimiento por no coincidir éste con la realidad. M. Peña Bernaldo de Quirós, ante, a la pág. 937. En la misma se ataca el contenido del reconocimiento, es decir, se controvierte el aparente nexo biológico que existe entre el reconocedor y el reconocido. Bossert, ante, a la pág. 245. Con relación a este tipo de acción se ha manifestado que si bien el reconocimiento es signo suficiente de la filiación que proclama, "cuando en juicio de impugnación se le

---

[17] Ya desde Alcaide v. Morales, 28 D.P.R. 278 (1920), habíamos aceptado en nuestro ordenamiento la existencia de una acción para impugnar el reconocimiento voluntario por vicios en el consentimiento.

[18] Sánchez Encarnación v. Sánchez Brunet, ante; Almodóvar v. Méndez, ante, a la pág. 243; M. Peña Bernaldo de Quirós, ante, a la pág. 937, M. Albaladejo, Curso de derecho civil, ante, a la pág. 262.

oponga,...que la verdad es otra, la verdad prevalecerá frente al título." M. Peña Bernaldo de Quirós, ante.[19]

La acción de impugnación de reconocimiento es una que afecta el honor y la intimidad de las personas. Por tanto no se trata de una acción pública y sólo puede ejercitarse por aquellos que estén legalmente legitimados para ello. R. Ortega-Vélez, ante, a la pág. 409. En ese sentido se sostiene que pueden ejercitar dicha acción aquellos a quienes la falsa filiación les perjudique.[20] Artículo 126 del Código Civil,31 L.P.R.A. sec. 505; Sánchez Encarnación v. Sánchez Brunet, ante; Almodóvar v. Méndez, ante, a la pág. 264 n. 33; R. Ortega-Vélez, ante, a la pág. 409. Tomando en cuenta lo anterior nuestro ordenamiento jurídico le ha reconocido capacidad para ejercitar la acción de impugnación de reconocimiento: al reconocedor; al propio reconocido, de manera indirecta, en las circunstancias en que reclama una filiación incompatible; y a los herederos, conforme lo establecido en el Artículo 116 del Código Civil sobre las personas que pueden impugnar la paternidad legítima. Sánchez Encarnación v. Sánchez Brunet, ante; Almodóvar v. Méndez, ante. Es preciso notar que en Sánchez Encarnación v. Sánchez Brunet, ante, donde la acción

---

[19] Sin embargo, Albaladejo sostiene que, luego de la reforma que sufrió el derecho filiatorio español en 1981, el único supuesto de impugnación de reconocimiento que quedó codificado en dicho país fue el que se funda en los vicios del consentimiento. M. Albaladejo, Curso de derecho civil, ante, a la pág. 262.

[20] Dicho perjuicio puede ser tanto material como moral. C.E. Mascareñas, Familia, 1962, pág. 359.

impugnando el reconocimiento fue instada por el hijo reconocido, intimamos que el padre biológico era otra de las personas que podía llevar a cabo la referida acción.

De lo anterior, se colige que el curso decisorio de este Tribunal se ha inclinado a reconocerle legitimación activa para instar la acción de impugnación de reconocimiento a las mismas personas que poseen legitimación activa para ejercitar la acción de impugnación de paternidad legítima. Ello abona a la tendencia de equiparar el tratamiento que el ordenamiento jurídico le otorga a ambas acciones de impugnación.


II

En el presente caso es preciso determinar si Rivera Ávila ostenta legitimación activa para impugnar el reconocimiento efectuado por Negrón Soto. Resolvemos que, en efecto, tiene capacidad para ello. Veamos.

En primer lugar, no existe controversia de hechos en cuanto a que el menor Julio Ángel nació vigente el matrimonio entre la demandante Castro Torres y el aquí recurrido, Rivera Ávila. Ello en vista de que éstos contrajeron nupcias el 26 de agosto de 1989, el niño nació el 15 de marzo de 1990, y la sentencia de divorcio que disolvió el matrimonio de éstos fue dictada en mayo de 1990. Por tal razón, tenemos que la criatura estaba cobijada por la presunción establecida en el Artículo 113 del Código Civil que supone que son hijos del marido aquellos nacidos luego de los ciento ochenta días de

celebrado el matrimonio. No obstante lo anterior, dicha presunción perdió todo efecto jurídico, o nunca adquirió tal efectividad, en vista de que el menor no fue inscrito como hijo de Rivera Ávila y Negrón Soto lo reconoció como hijo suyo inscribiéndolo como tal en el Registro Demográfico.

Además, por resolución de este Tribunal indirectamente confirmamos los "lazos filiatorios" entre el menor y Negrón Soto cuando denegamos la revisión a la sentencia emitida por el tribunal intermedio apelativo en la que se dictaminó que la acción de impugnación de reconocimiento instada por Negrón Soto había caducado.[21] Es imposible tener dos filiaciones o dos padres al mismo tiempo,[22] por tanto, al reconocer la filiación entre Negrón Soto y el niño la

---

[21] En la referida Resolución emitida el 27 de agosto de 1993 por una Sala Especial de este Tribunal integrada por los jueces: Negrón García, Hernández Denton y Alonso Alonso, señalamos, en lo pertinente, que:

> la única filiación del menor con eficacia jurídica es la que surge del certificado de nacimiento. Al reconocerlo, el peticionario Negrón Soto derrotó la presunción de legitimidad o "condición o estado de hijo" que el menor tenía al momento del nacimiento. Una vez reconocido el niño en la inscripción de su nacimiento, su condición o estado de hijo cambió. . . . Por no tratarse de la condición de hijo adquirida por el nacimiento, no era necesario,...impugnar la "paternidad legítima reconocida". Los efectos legales de ambos modos en que un niño adquiere su estado de hijo son los mismos, por ello el término para ejercitar la acción de impugnación de paternidad en ambos casos es el mismo. (Énfasis nuestro.) Véase, Petición de Certiorari, Apéndice XXXII, pág. 213.

[22] J. Castán Tobeñas, Derecho civil español, común y foral, ante, a la pág. 124.

presunción de paternidad que pudo haber existido entre Rivera Ávila y el menor perdió su efecto jurídico. Esto es, el acto de reconocimiento por parte de Negrón Soto, la consolidación de los lazos filiatorios entre ambos al caducarle a éste la acción de impugnación y nuestra resolución confirmando dicho lazo evidencian que la presunción de paternidad a favor de Rivera Ávila perdió toda vigencia jurídica.

Esta situación anómala nos aparta de la normativa que rige la filiación matrimonial y nos sitúa en el escenario de los hijos que no están cobijados por la presunción matrimonial y adquieren su condición de hijos por el reconocimiento voluntario. Esto es, nos ubica en el ámbito de la filiación no matrimonial y de la norma establecida en torno a la acción de impugnación de reconocimiento. Tenemos pues que el padre jurídico o registral de Julio Ángel, según surge del certificado de nacimiento de éste, es Negrón Soto.

Ahora bien, es importante notar que la inscripción en el Registro Demográfico de Puerto Rico no constituye, de por sí, una declaración incontrovertible de un hecho filiatorio. Véase: Vélez v. Franqui, 82 D.P.R. 762, 775 (1961). Por tanto, el certificado de nacimiento constituye sólo evidencia *prima facie* para probar el estado civil de una persona y su suficiencia se reconoce únicamente hasta que se establezcan, por otra clase de prueba, los verdaderos hechos filiatorios. *Ibid.*

El reconocimiento hecho por Negrón Soto crea una presunción que, como dijimos al exponer la norma, supone que el menor es hijo suyo. No obstante, dicha presunción es de carácter controvertible y puede ser atacada por varias personas que nuestro ordenamiento ha establecido como interesadas para ello. Según mencionamos previamente, no toda persona está legitimada para ejercer dicha acción, sino sólo aquellas a quienes el reconocimiento le cause perjuicio, sea éste moral o económico. Entre estas personas se encuentran el reconocedor, el propio hijo reconocido, los herederos, y según intimamos en Sánchez Encarnación v. Sánchez Brunet, ante, el alegado padre biológico. En fin, y como expresáramos anteriormente, las mismas personas que también pueden ejercer la acción de impugnación de paternidad legítima. ¿Es Rivera Ávila parte de uno de los grupos legitimados para ejercer la misma? ¿Resultó éste perjudicado por el reconocimiento hecho por Negrón Soto? Veamos.

Como señaláramos con anterioridad, en Ramos v. Marrero, ante, establecimos que un padre biológico puede impugnar la presunción de legitimidad que existe a favor del marido de la madre. La similitud existente entre la acción para impugnar la paternidad legítima y la de impugnación de reconocimiento nos obliga a reconocerle legitimación activa al alegado padre biológico que ataca la presunción de paternidad que surge en virtud del reconocimiento, tal y como se le ha reconocido capacidad al padre biológico que ataca la presunción de paternidad a

favor del marido. Hemos establecido que ambas presunciones tienen la misma fuerza y efecto, por tanto, no vemos razón para que el alegado padre biológico esté en mejor posición cuando ataca la presunción de legitimidad que cuando trata de cuestionar la presunción derivada del reconocimiento. A tono con lo anterior, es pertinente señalar que desde Ocasio v. Díaz, 88 D.P.R. 676 (1963) abrimos la puerta para que el alegado padre biológico que no inscribió al hijo como suyo pueda impugnar la inscripción hecha por otro. A tales efectos señalamos:

> "Como padre de ese hijo debería prevalecer el que de ellos primeramente lo inscribió como hijo suyo en el Registro Demográfico y asumió el cumplimiento de las serias y graves responsabilidades paternofiliales, con mejor razón en una época como la presente en que para el padre jurídico es simplemente un hijo y para el natural, también simplemente, es un hijo. Le tocaría al que no lo inscribió como hijo suyo, impugnar ante los tribunales la validez de la inscripción registral." (Énfasis nuestro). *Ibid*. a la pág. 733 n. 10.

En el presente caso Rivera Ávila es, precisamente, ese individuo que alega ser el padre biológico del niño e intenta atacar la presunción de paternidad que surge del reconocimiento voluntario hecho por Negrón en el Registro Demográfico. Además, resulta esencial enfatizar que no se trata de cualquier tercero no interesado en la condición filiatoria de Julio Ángel. Como recordaremos, Rivera Ávila era el marido de Castro Torres y vigente el matrimonio de ambos fue que nació el niño. Si bien la presunción de paternidad a su favor perdió su efecto jurídico, ese tecnicismo no puede cegarnos ante la realidad de que siendo

éste marido de la madre, al momento de nacer la criatura, tiene amplias probabilidades de ser el padre biológico del niño.[23] Esto, definitivamente, lo ubica entre las personas con interés legítimo para atacar el reconocimiento hecho por Negrón Soto. No hay duda de que resultó perjudicado por el reconocimiento voluntario hecho por este último. Más aún, si tomamos en cuenta que Rivera Ávila, pudo haber sido engañado al habérsele ocultado el nacimiento del niño y el reconocimiento de éste como hijo de otro por un periodo de casi diez años.

Todo lo anterior, unido al interés de que "el Derecho puertorriqueño [vaya] abriendo camino a través de la enmarañada jungla de prejuicios y convencionalismos sociales y tecnicismos de ley para hacer que brille la verdad y se reconozca a todos los fines legales la relación biológica entre padres e hijos",[24] nos lleva a una sola conclusión. Bajo las circunstancias del presente caso, y a la luz de lo señalado en anteriores decisiones, reconocemos que Rivera Ávila, como ex-esposo de la madre del menor y alegado padre biológico del mismo, ostenta legitimación

---

[23] Repetimos que, previo a solicitar intervención en el pleito para impugnar el reconocimiento del menor, Rivera Ávila se ocupó de someterse a las pruebas de histocompatibilidad para cerciorarse de que, en efecto, tenía una alta probabilidad de ser el padre biológico del menor. Ello lo aleja de lo que sería una solicitud o reclamación frívola o caprichosa. De hecho, los resultados revelaron que hay una probabilidad de que Rivera sea el padre del menor en más de un 95%.

[24] Ramos v. Marrero, ante, a la pág. 358 (énfasis nuestro).

activa para impugnar el reconocimiento voluntario efectuado en el Registro Demográfico por Negrón Soto.

III

Una vez resuelto el problema referente a la legitimación activa del interventor para impugnar el reconocimiento del menor Julio Ángel procede determinar si dicha acción caducó. La Procuradora, y aquí peticionaria, arguye que el término aplicable a la acción de impugnación de Rivera Ávila es de tres meses a partir de que se inscribe el reconocimiento en el Registro Demográfico o desde la fecha del documento público en que se lleva a cabo el mismo. En virtud de ello sostiene que, si bien Rivera Ávila tiene legitimación activa llevar a cabo la acción, la misma caducó al haber transcurrido casi diez años entre el reconocimiento del menor en el referido Registro (20 de marzo de 1990) y la interposición de su solicitud de intervención impugnando el reconocimiento del menor (22 de octubre de 1999). Por otro lado, Rivera Ávila y Negrón Soto sostienen, posición que avaló el tribunal intermedio apelativo que el término aplicable es el de seis meses contados a partir de que el actor, que se encuentra fuera de Puerto Rico, se entera del nacimiento del menor y de la filiación contradictoria del Registro Demográfico. En virtud de ello afirman que, de comprobarse que Rivera Ávila advino en conocimiento del nacimiento e inscripción del menor a principios de junio de 1999, según alega en su

moción, debe concluirse que su acción fue radicada en tiempo.

Sabido es que tanto a las acciones de impugnación de paternidad legítima como a las de impugnación de reconocimiento le son aplicables términos de caducidad.[25] Véase: Santiago v. Cruz Maldonado, 109 D.P.R. 143, 146 (1979); Almodóvar v. Méndez, ante a la pág. 260. Ello en consideración de los efectos negativos a la estabilidad familiar que conlleva el ejercicio de las mismas.

En cuanto a la acción para impugnar la legitimidad, el Código Civil dispone que "deberá ejercitarse dentro de los tres (3) meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico, y de los seis (6) meses si estuviera fuera de Puerto Rico, a contar desde que tuvo conocimiento del nacimiento." Artículo 117 del Código Civil, 31 L.P.R.A. sec. 465. Esto es, los términos de caducidad corren a partir de: (1) la inscripción de la filiación en el registro civil cuando el marido se hallare en Puerto Rico  o (2) desde que el marido conoce del nacimiento cuando se encuentra fuera de Puerto Rico.[26] En el segundo caso se refiere al desconocimiento del

---

[25] "La caducidad es la decadencia de un derecho, o su pérdida, por no haber cumplido la formalidad o condición exigida por ley en un plazo determinado. Esta pérdida del derecho se produce automáticamente por no ejercitarse en el transcurso de dicho plazo." R. Ortega-Vélez, ante, a la pág. 393.

[26] Cabe señalar que en varias ocasiones se ha intimado a la Legislatura para que derogue todas las disposiciones de nuestro Código Civil referentes a la filiación, entre ellas las que disponen los términos para ejercer las acciones de

(Continúa . . .)

hecho del nacimiento y no a la ignorancia o desconocimiento por el padre legal de la realidad de su paternidad en cuanto al hijo. Calo Morales v. Cartagena Calo, ante, a la pág. 123.

Nuestra Asamblea Legislativa no ha establecido un término para el ejercicio de la acción de impugnación de reconocimiento. Ello a pesar de los múltiples llamados que, a esos efectos, se le han hecho.[27] Tal inacción nos ha movido a suplir las lagunas existentes en nuestro ordenamiento jurídico en torno a ese aspecto. Como consecuencia, hemos establecido un mismo plazo para la

---

impugnación y así abrir paso a nuevos moldes jurídicos. Véase Informe sobre el Libro Primero del Código Civil de Puerto Rico, sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico, San Juan, 1974, pág. 165 et. seq.; Propuestas de Enmiendas al Código Civil de Puerto Rico, preparado por el Comité de Derecho de Familia de la Academia Puertorriqueña de Jurisprudencia y Legislación, 11 de octubre de 1989; Estudio Preparatorio presentado a la Comisión Conjunta Permanente para la Revisión y Reforma del Código Civil de Puerto Rico Artículos 24 a 251 y 126 a 1333 del Código Civil de Puerto Rico, 1999. En el Informe sobre el Libro Primero del Código Civil de Puerto Rico de 1974, ante, se recomendó extender el término para ejercer la acción de impugnación de paternidad legítima a seis (6) meses si el marido se halla en Puerto Rico y a un (1) año si está fuera, a partir, en ambos casos, desde que advenga en conocimiento del hecho objetivo del nacimiento. Ibid. a las págs. 207, 459-60. Por su parte en el informe de Propuestas de Enmiendas al Código Civil de Puerto Rico de 1989, ante, se propuso extender el término de dicha acción a un año a contar desde que se tuvo conocimiento del hecho de nacimiento, independientemente de que el marido se hallare en o fuera de Puerto Rico. Demás está decir que la Asamblea Legislativa no ha actuado sobre estas recomendaciones.

[27] Véase Informe sobre el Libro Primero del Código Civil de Puerto Rico de 1974, ante, a las págs. 203-06; Propuestas de Enmiendas al Código Civil de Puerto Rico de 1989, ante; Estudio Preparatorio presentado a la Comisión Conjunta Permanente para la Revisión y Reforma del Código Civil de Puerto Rico de 1999, ante, a las págs. 282-84.

radicación tanto de la acción de impugnación de reconocimiento como para la de impugnación de legitimidad. Almodóvar v. Méndez, ante. Esto, en respuesta a la exigencia de igualdad que nuestra Constitución proclama y a la similitud existente entre ambas acciones. Bajo ese tenor hemos expresado que "sólo puede existir un único plazo de caducidad para la presentación de una acción de la 'condición de estado de hijo', ya sea la que impugna el reconocimiento o la que impugna la paternidad." (Énfasis nuestro.) R. Ortega-Vélez, ante, a la pág. 409; Ramos v. Marrero, ante; Almodóvar v. Méndez, ante; Sánchez Encarnación v. Sánchez Brunet, ante.

Específicamente se ha dispuesto que el término para ejercer la acción impugnando el reconocimiento es de tres (3) meses a partir de la fecha en que se inscribe dicho reconocimiento en el Registro Demográfico o desde la fecha del documento público correspondiente en que se lleva a cabo el mismo. Almodóvar v. Méndez, ante, a la pág. 260. No obstante lo anterior, nada expresamos en dicho caso respecto a la situación particular del impugnante, que ostentando legitimación activa para ejercitar la acción, se encuentra fuera de Puerto Rico ignorando tanto el hecho del nacimiento como del reconocimiento de la criatura.

Somos del criterio que para tales casos, como sucede con el aquí recurrido, resultaría injusto e irrazonable aplicarle automáticamente el término previamente mencionado establecido en el caso de Almodóvar v. Méndez, ante. Menos aún cuando las constancias del Registro Demográfico a

diferencia, por ejemplo, de las constancias del Registro de la Propiedad, no gozan del principio de publicidad que permite imputarle a todo el mundo el conocimiento de lo que en ellos consta.[28] Además, sabido es que "no puede ejercitarse una acción si de buena fe el titular desconoce que tiene derecho a ejercitarla." Martínez v. Bristol Myers, Inc., 147 D.P.R. 383, 405 (1999). Para ello es necesario que conozca todos los elementos necesarios para llevarla a cabo como lo serían, en este caso, el hecho del nacimiento y/o reconocimiento de la criatura.

Para los casos de impugnación de paternidad legítima el Artículo 117 del Código Civil, ante, provee para esa situación estableciendo un plazo de seis meses contados desde que el marido tiene conocimiento del nacimiento del menor.[29] Si bien para las acciones de impugnación de reconocimiento nada se ha provisto, sí se han hecho propuestas y recomendaciones razonables en cuanto al término que debe aplicar y el punto de partida para computar el mismo. En el Informe sobre el Libro Primero del Código Civil de Puerto Rico de 1974, ante, además de

---

[28] "No existe...regla que establezca la presunción de conocimiento del contenido del Registro Civil. El hecho de ser público el Registro Civil no lleva consigo necesariamente el conocimiento de las inscripciones de nacimiento." M. Peña Bernaldo de Quirós, ante, a la pág. 996.

[29] Cabe destacar que en España, luego de la reforma de 1981 se dispuso en el Artículo 136 del Código Civil que la acción de impugnación de paternidad se podrá ejercer en el plazo de un año contado desde la inscripción de la filiación en el Registro Civil, pero dicho plazo no comienza a correr mientras se ignore el nacimiento de la criatura. M. Peña Bernaldo de Quirós, ante, a la pág. 996.

recomendar los mismos términos de caducidad para la acción de impugnación de paternidad y para la de impugnación de reconocimiento, se propuso que la acción de impugnación de reconocimiento se ejercitara "por aquellos a quienes afecte, dentro de los términos señalados en el artículo 6, computados a partir del momento que adviniesen conocedores de tal reconocimiento." [30] *Ibid.* a la pág. 203. Esto es, se recomendó que la acción se ejercitase en el término de seis meses, si el legitimado para impugnar se encuentra en Puerto Rico y un año si se hallare fuera, en ambos casos, contando a partir de que el que impugna advenga en conocimiento del reconocimiento. En el Informe se manifiesta que la razón para tomar ese punto de partida para el cómputo de dicho plazo consiste en "que nuestro Registro Demográfico no goza del principio de publicidad y, por tanto, lo contenido en el mismo no es susceptible de darse por conocido o publicado bajo la ficción del conocimiento imputado."[31]

Por otra parte, en el reciente Estudio Preparatorio presentado a la Comisión Conjunta Permanente para la Revisión y Reforma del Código Civil de Puerto Rico de 1999, ante, también se enfatiza la inadecuacidad de los términos

---

[30] El artículo 6 al que se hace referencia es el que dicho informe propuso para los casos de impugnación de paternidad que establece el término de seis meses para ejercitar dicha acción, de encontrarse el marido en Puerto Rico, y un año si se hallare fuera. Véase nota al calce 27.

[31] Informe sobre el Libro Primero del Código Civil de Puerto Rico de 1974, ante, a la pág. 206.

tan breves que actualmente existen para ejercitar las acciones de impugnación.[32] En virtud de ello propone que, a las mismas, les sea aplicable el término de un año <u>desde que se tuvo conocimiento del nacimiento o se verifique el hecho de la inscripción</u>. *Ibid.* a la pág. 283. En tal Estudio se explica que el anterior término y el punto de partida para contar el mismo responde a la problemática planteada por la Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico, a los efectos de que, "si el momento en que comienza a contarse el plazo de caducidad queda determinado por condiciones o circunstancias tan objetivas como la mera inscripción del nacimiento en el Registro Demográfico, su computación no se ajustaría al principio general de que los plazos comienzan a correr desde que el afectado pudo llevar la acción o conoció los hechos que justificaban su causa de acción." *Ibid.* a la pág. 282 citando el <u>Informe sobre</u>

---

[32] En dicho informe se critica la rigidez de los actuales plazos y condiciones establecidas en nuestro ordenamiento para instar estas acciones y se sostiene que, las mismas, pueden provocar una injusticia en casos en que el hombre tenga una razón de peso o extraordinaria que justifique la presentación tardía de una acción de impugnación. Se menciona que el interés del menor, como justificación para perpetuar dichos plazos, sirve de escudo para "el engaño, la infidelidad, la deshonestidad y la injusticia." <u>Estudio Preparatorio presentado a la Comisión Conjunta Permanente para la Revisión y Reforma del Código Civil de Puerto Rico de 1999</u>, ante, a la pág. 282. Además de recomendar la extensión de dichos plazos, este informe, propone que se autorice la investigación de paternidad por métodos científicos con independencia de que haya transcurrido el plazo para las acciones de impugnación. *Ibid.* a la pág. 281.

<u>Discrimen por Razón de Género en los Tribunales de Puerto Rico</u>, Agosto 1995, a la pág. 203.

En vista de la razonabilidad de las propuestas presentadas en los informes antes discutidos, y de lo ya dispuesto por este Tribunal en cuanto a que debe existir un <u>único plazo</u> para ejercitar ambos tipos de acciones de impugnación, <u>resolvemos hacer extensible a la acción de impugnación de reconocimiento el término de seis (6) meses dispuesto en el Artículo 117 del Código Civil, cuando el legitimado para impugnar se hallare fuera de Puerto Rico.</u>[33] <u>Ahora bien, ese término comenzará a correr a partir de que la persona autorizada para instar la acción advenga en conocimiento del reconocimiento o de la inscripción contradictoria en el registro</u>. No hay razón para otorgarle al impugnante de la paternidad legítima que está fuera de Puerto Rico un plazo más amplio para ejercitar la acción y negárselo al legitimado para impugnar el reconocimiento que se halle fuera de Puerto Rico ignorando el reconocimiento o inscripción del menor como hijo de otro.

De este modo limitamos el término de tres meses dispuesto en <u>Almodóvar</u> v. <u>Méndez</u>, ante, para ejercer la acción de impugnación de reconocimiento a los casos en que el actor se encuentre en Puerto Rico. Cuando éste se

_____

[33] Es de notar que si bien en <u>Sánchez Encarnación</u> v. <u>Sánchez Brunet</u>, ante, este Tribunal se expresó, brevemente, en torno a la posibilidad de que el término de tres y seis meses establecido en el Artículo 117 del Código Civil opere, también, para las acciones de impugnación de reconocimiento, esta es la primera vez que evaluamos tal asunto exhaustivamente.

hallare fuera de Puerto Rico, aplicará el término de seis meses para ejercitarla a partir de que haya conocido el hecho del reconocimiento.[34] Si bien la determinación de estos plazos constituye una función que le corresponde a la Legislatura, nos vemos obligados a suplir jurisprudencialmente las lagunas existentes en esta materia hasta que dicha rama gubernamental decida expresarse en torno a la misma.

IV

En el presente caso, nos encontramos ante una acción de impugnación de reconocimiento en la cual el actor (Rivera Ávila) se encontraba fuera de Puerto Rico desde antes del alumbramiento y al momento en que el menor fue inscrito, como hijo de otro, en el Registro Demográfico. Rivera Ávila alega que la madre de su ex-esposa le informó que ésta había abortado. Sostiene, además, que no fue sino hasta principios de junio de 1999 que advino en conocimiento de que el niño, en efecto, había nacido y que había sido inscrito en el Registro Demográfico como hijo de Negrón Soto. A raíz de ello, y luego de someterse a unas

---

[34] Nada de lo anterior altera lo dispuesto a los efectos de que los hijos, por no estar situados de forma similar a los padres en el ordenamiento jurídico, ostentan términos más amplios para ejercer las acciones de filiación. Calo Morales v. Cartagena Calo, ante. Tampoco se altera la norma que establece el plazo de tres meses para impugnar el reconocimiento desde que haya cesado el vicio en caso de haber mediado violencia o intimidación en el reconocimiento, y desde la fecha en que se hizo el reconocimiento, en caso de haber mediado error. Almodóvar v. Méndez, ante, a la pág. 261.

pruebas que corroboraron la alta probabilidad de ser padre de Julio Ángel, Rivera Ávila instó su solicitud de intervención impugnando el reconocimiento hecho por Negrón Soto.

Si aplicamos la norma previamente esbozada, y Rivera Ávila llegase a demostrar que efectivamente se enteró del reconocimiento del menor en junio de 1999, resultará forzoso concluir que su acción impugnando dicho reconocimiento, interpuesta en octubre de 1999, fue instada en tiempo. Ello por no haber transcurrido el plazo de caducidad de seis meses a partir de que advino en conocimiento del reconocimiento o de la inscripción contradictoria en el Registro Demográfico. De resultar ciertas sus alegaciones, el término para interponer la referida acción no vencía hasta diciembre de 1999.

V

Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Circuito de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia y ordenamos: a) la pronta celebración de una vista evidenciaria para que dicho foro le ofrezca a Rivera Ávila y a las demás partes la oportunidad de desfilar prueba sobre sus alegaciones; b) la designación de un Defensor Judicial[35] que represente los intereses del menor

---

[35] Ello en virtud de la norma establecida en Chabrán v. Méndez, 74 D.P.R. 768,786 (1953) confirmada posteriormente en los casos Agosto v. Javierre, ante, a la pág. 500;

(Continúa . . .)

en caso de entender procedente la acción de impugnación de reconocimiento; y c) la postergación de la acción por incumplimiento de la obligación alimentaria hasta que se resuelva lo relativo a la filiación del menor Julio Ángel.

Se dictará Sentencia de conformidad.


                              FRANCISCO REBOLLO LÓPEZ
                                   Juez Asociado

---

Robles López v. Guevárez Santos, ante, a las págs. 568-69; y Ramos v. Marrero, ante, a la pág. 372.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eileen Castro Torres

  Demandante

    vs.

José Antonio Negrón Soto

  Demandado                        CC-2001-983      CERTIORARI

    vs.

Francisco Rivera Ávila

  Interventor-Recurrido

Procuradora Especial de
Relaciones de Familia

  Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 23 de mayo de 2003

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria la emitida por el Tribunal de Circuito de Apelaciones.

Se devuelve el caso al Tribunal de Primera Instancia ordenándose: a) la pronta celebración de una vista evidenciaria para que dicho foro le ofrezca a Rivera Ávila y a las demás partes la oportunidad de desfilar prueba sobre sus alegaciones; b) la designación de un Defensor Judicial que represente los intereses del menor en caso de entender procedente la acción de impugnación de reconocimiento; y c) la postergación de la acción por incumplimiento de la obligación alimentaria hasta que se resuelva lo relativo a la filiación del menor.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón emitió Opinión disidente. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eileen Castro Torres

   Demandante

         v.

José Antonio Negrón Soto                    CC-2001-983

    Demandado

Francisco Rivera Ávila

    Interventor-recurrido

Procuradora Especial de
Relaciones de Familia

   Peticionaria

Opinión disidente emitida por la Jueza Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico, a 23 de mayo de 2003

El recurso de epígrafe plantea el delicado asunto del reconocimiento de un menor por un tercero cuando a dicho menor le cobija la presunción de paternidad por estar su madre casada al momento del nacimiento. Disentimos de la opinión mayoritaria por entender que el Sr. José Antonio Negrón Soto no podía reconocer al menor ya que éste legalmente era hijo del Sr. Francisco Rivera Ávila.[36]

Antes de comenzar a exponer las razones para nuestro disenso, haremos un recuento del trasfondo fáctico y procesal que dio lugar al recurso ante nos.

---

[36] **Estamos conformes con el acápite I de la opinión mayoritaria.**

I

La Sra. Eileen Castro Torres y el Sr. Francisco Rivera Ávila contrajeron matrimonio el 26 de agosto de 1989. Los señores Castro-Rivera convivieron hasta finales de 1989, cuando el señor Rivera Ávila se trasladó a los Estados Unidos. Al tiempo de su traslado, éste conocía que su entonces esposa se encontraba embarazada. Luego de que el señor Rivera Ávila se marchara del país, la señora Castro Torres reinició una relación sentimental con el Sr. José Antonio Negrón Soto.

El 15 de marzo de 1990, estando aún vigente su matrimonio con el señor Rivera Ávila, la señora Castro Torres dio a un luz a un niño que fue inscrito en el Registro Demográfico por el señor Negrón Soto como hijo suyo y de la señora Castro Torres. El menor fue inscrito con el nombre de Julio Ángel Negrón Castro. Entretanto, el señor Rivera Ávila se encontraba en los Estados Unidos e ignoraba el hecho del nacimiento del menor ya que en una llamada telefónica que hizo a la residencia de su entonces esposa le habían informado que ésta había abortado. Transcurridos dos (2) meses luego del nacimiento del menor, el matrimonio Castro-Rivera quedó disuelto mediante sentencia de divorcio dictada en rebeldía el 18 de mayo de 1990 y notificada por edicto al señor Rivera Ávila el 19 de junio del mismo año.

Así las cosas, el 20 de julio de 1990 la señora Castro Torres presentó una demanda de alimentos contra el señor Negrón Soto solicitando que se impusiera el pago de una pensión alimentaria para el menor. El señor Negrón Soto reconvino impugnando el reconocimiento. Adujo que el menor había nacido vigente el matrimonio entre los señores Castro-Rivera y que, de acuerdo con

la presunción de paternidad aplicable a los hijos habidos durante el matrimonio, el menor era hijo del señor Rivera Ávila. El Tribunal de Primera Instancia ordenó que el menor, su madre y el señor Negrón Soto se sometieran a una prueba de histocompatibilidad cuyo resultado excluyó al señor Negrón Soto como padre biológico del menor.

El foro de instancia, mediante resolución de 11 de septiembre de 1992, determinó que la causa de acción del señor Negrón Soto para impugnar el reconocimiento del menor había caducado. Inconforme con tal determinación, el señor Negrón Soto acudió ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) mediante recurso de *certiorari*. Dicho foro denegó la expedición del auto solicitado mediante resolución de 30 de mayo de 1993. Posteriormente, el señor Negrón Soto acudió ante nos solicitando la revisión del referido dictamen. Este Tribunal, mediante resolución emitida el 27 de agosto de 1993, declaró no ha lugar la petición de *certiorari*.

Luego de los mencionados trámites interlocutorios, la señora Castro Torres solicitó ante el foro de instancia un aumento de la pensión alimentaria. Pendiente dicha acción, el 19 de octubre de 1999, el señor Rivera Ávila radicó una moción de intervención en la reclamación de alimentos.[37] Adujo que tuvo conocimiento del nacimiento y de la inscripción del menor, a principios de junio de 1999, al coincidir en una actividad con el señor Negrón Soto. En la referida moción de intervención alegó ser el verdadero padre del menor y solicitó que se ordenara la rectificación del

---

[37] **Previo a la radicación de dicha moción, el señor Rivera Ávila se sometió a una prueba de histocompatibilidad que arrojó una probabilidad de paternidad presunta de 95%.**

certificado de nacimiento de éste para que quedara inscrito como hijo suyo.

La señora Castro Torres se opuso a la intervención aduciendo que la causa de acción para que el señor Rivera Ávila pudiera impugnar el reconocimiento llevado a cabo por el señor Negrón Soto había caducado. La Procuradora Especial de Relaciones de Familia (en adelante Procuradora) compareció oponiéndose a la moción de intervención, alegando la caducidad de la causa de acción del señor Rivera Ávila. El foro de instancia ordenó la paralización de los procedimientos referentes a la reclamación de alimentos hasta tanto se resolviera la moción de intervención.

Mediante resolución emitida el 12 de julio de 2001, el tribunal de instancia determinó que el señor Rivera Ávila carecía de legitimación activa para radicar la solicitud de intervención. El foro sentenciador fundamentó su determinación en que ni el Código Civil ni la jurisprudencia reconocen legitimación activa "a un marido, o a un padre [para] reclamar paternidad a base de atacar o impugnar una determinación previa de paternidad". Señaló, además, que en el supuesto de que el señor Rivera Ávila tuviera legitimación activa para reclamar la paternidad del menor, su acción había caducado. Denegada la intervención, continuaron ante el tribunal de instancia los procedimientos contra el señor Negrón Soto referentes a la reclamación de aumento de pensión alimentaria.

Por su parte, el señor Rivera Ávila, inconforme con la denegatoria de intervención, acudió al Tribunal de Circuito vía *certiorari*. Alegó que tenía un interés genuino en reconocer al menor, al ser su padre biológico, y que éste había nacido vigente su matrimonio con la señora Castro Torres, por lo cual invocó la

presunción de paternidad establecida en el Art. 113 del Código Civil, 31 L.P.R.A. § 461. Adujo, además, que su causa de acción no había caducado ya que el término de tres (3) meses para impugnar la legitimidad de un hijo, o de seis (6) meses cuando el padre está fuera de Puerto Rico, comenzó a decursar desde que advino en conocimiento del reconocimiento voluntario llevado a cabo por el tercero, es decir, por el señor Negrón Soto. Art. 117 del Código Civil, 31 L.P.R.A. § 465. Finalmente, solicitó que el foro apelativo intermedio ordenara la celebración de una vista evidenciaria.

La señora Castro Torres se opuso a la expedición del auto solicitado alegando que el reconocimiento voluntario del señor Negrón Soto había derrotado la presunción de paternidad a favor del señor Rivera Ávila y que, derrotada tal presunción, este último carecía de legitimación activa para reclamar la paternidad del menor. Por otro lado, el señor Negrón Soto aceptó la paternidad presunta del señor Rivera Ávila por haber nacido el menor vigente el matrimonio Castro-Rivera. Finalmente, la Procuradora compareció en un Escrito en Cumplimiento de Orden donde planteó que la causa de acción había caducado y que al señor Rivera Ávila no le asistía la presunción de paternidad en virtud del reconocimiento voluntario efectuado por el señor Negrón Soto.

El 25 de octubre de 2001 el Tribunal de Circuito emitió sentencia donde revocó la resolución emitida por el foro de instancia. Resolvió que el señor Rivera Ávila tenía legitimación activa para impugnar el reconocimiento inscrito en el Registro Demográfico por ser el presunto padre del menor. Además, determinó que la acción no había caducado ya que los seis (6) meses establecidos en el Art. 117, *supra*, comenzaron a decursar

desde que la parte actora se enteró del nacimiento del menor y de la filiación contradictoria que surgía del Registro Demográfico.

Inconforme con el referido dictamen, la Procuradora acudió ante nos alegando que:

> Erró el honorable Tribunal de Circuito de Apelaciones al determinar que no había caducado la causa de acción del interventor para impugnar el reconocimiento realizado por el padre registral, aun cuando ha transcurrido más de diez años desde la fecha de tal reconocimiento.

En síntesis, del anterior trasfondo fáctico y procesal surge que tenemos ante nuestra consideración un recurso que requiere la revisión de una determinación donde se permitió la intervención del señor Rivera Ávila para **reclamar la efectividad de la presunción de paternidad que les asiste a los hijos habidos durante el matrimonio**, a tenor del Art. 113 del Código Civil, *supra*. Dicha intervención fue solicitada en una reclamación de alimentos y, **de prosperar, tendrá como consecuencia inmediata la impugnación del reconocimiento voluntario llevado a cabo por el señor Negrón Soto** y la imposición de una pensión alimentaria al señor Rivera Ávila como padre del menor.[38] Aclarado este extremo, pasaremos a examinar las normas aplicables a la presente controversia.

II

A.   La filiación

---

[38]   **El foro de instancia permitió la acumulación de una acción de filiación con una reclamación de alimentos. Tal acumulación puede llevarse a cabo, de acuerdo con la Regla 14.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que permite que en una acción civil puedan acumularse todas las acciones que una parte tenga contra la parte adversa.**

**En el caso de autos, podía acumularse la reclamación de alimentos con la acción para reclamar la efectividad de la presunción de paternidad a favor del señor Rivera Ávila en vista de que en caso de determinarse que éste es el padre del menor, le corresponderá pagar la pensión alimentaria solicitada.**

La filiación es un estado jurídico que pretende proyectar la realidad biológica de la procreación y que a su vez genera derechos y obligaciones entre los progenitores y los hijos. A tales efectos el ordenamiento jurídico persigue que tanto la paternidad biológica como la jurídica concuerden, tomando en consideración que en algunas ocasiones el vínculo filiatorio no surge necesariamente de un hecho biológico. Podría ocurrir que existan padres jurídicos que no sean los progenitores de una criatura. *Calo Morales v. Cartagena Calo*, 129 D.P.R. 102, 111-112 (1991).

Precisamente para que la verdad jurídica corresponda en lo posible con la verdad biológica es que hemos abandonado los prejuicios y convencionalismos al interpretar las disposiciones legales que regulan la filiación, de manera que se proteja el derecho de los padres biológicos a que se les reconozca su condición de tales y el derecho de los hijos a ir en la búsqueda de su verdadera filiación. *Ramos v. Marrero*, 116 D.P.R. 357, 372 (1985). La preeminencia de esta institución jurídica obedece a sus efectos en los hijos respecto al derecho a llevar los apellidos de los padres, a recibir alimentos y a los derechos sucesorios. Art. 118 del Código Civil, 31 L.P.R.A. § 466.

La procreación es la fuente primaria para establecer el nexo filial, sin embargo, como el hecho biológico en ocasiones es de difícil constatación, el ordenamiento se ha encargado de establecer los presupuestos fácticos que dan lugar a los efectos jurídicos de la filiación. Luis Díez-Picazo y Antonio Gullón, *Sistema de Derecho civil*, Vol IV, Tecnos, 7ma ed., 1997, pág. 252. Así, actualmente se reconocen tres (3) clases de filiación: la

matrimonial, la extramatrimonial y la adoptiva. Resultan pertinentes a la controversia ante nos la filiación matrimonial y la extramatrimonial.

En primer lugar, es menester indicar que independientemente de la forma en que los hijos adquieran la filiación, ésta produce idénticos efectos jurídicos en lo concerniente al estado de hijo. En vista de lo anterior, resulta improcedente establecer clasificaciones entre hijos legítimos o ilegítimos ya que una vez se determina la filiación por cualquiera de los medios provistos en la legislación, son irrelevantes las circunstancias del nacimiento. *Ocasio v. Díaz*, 88 D.P.R. 676, 749-750 (1963). Mediante el reconocimiento de iguales efectos jurídicos a las distintas formas para determinar la filiación se salvaguarda el principio de igualdad consagrado en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico. *Id*. en las págs. 747-748.

Aunque el estado de hijo tiene iguales efectos jurídicos, sí existen distinciones respecto a la forma para adquirir tal condición. Como bien señala el profesor Raúl Serrano Geyls, **"[l]a persona nacida del matrimonio de sus padres tiene establecido presuntamente su estado de hijo sin necesidad de gestión alguna de reconocimiento por sus padres"**. Raúl Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, Vol. II, Univ. Interamericana de Puerto Rico, 2002, pág. 310. (Énfasis suplido.) La referida presunción surge por virtud del Art. 113 del Código Civil, *supra*. Éste dispone:

> Son hijos legítimos los nacidos después de los ciento
> ochenta días siguientes al de la celebración del
> matrimonio y antes de los trescientos días siguientes a
> su disolución.

Contra esa legitimidad no se admitirá otra prueba que la imposibilidad física del marido para tener acceso con su mujer en los primeros ciento veinte días de los trescientos que hubiesen precedido al nacimiento del hijo.[39]

El Art. 113, *supra*, "a manera de **investidura legal**, crea el estado de presunción filial". *Tosado v. Tenorio*, 140 D.P.R. 859, 863 (1996); *Moreno Álamo v. Moreno Jimenez*, 112 D.P.R. 376, 379 (1982). Esta presunción se originó hace varios siglos cuando los medios científicos disponibles dificultaban la determinación de la paternidad. En *Moreno Álamo v. Moreno Jimenez*, *supra*, en la pág. 380, dijimos que entre los presupuestos en los que se fundamenta la presunción de paternidad se encuentran la voluntad tácita del marido de estimar suyos los hijos concebidos por su esposa; la fidelidad de la mujer; y la normal cohabitación de los cónyuges.

Para que opere esta presunción será necesaria la concurrencia de los siguientes elementos: que se acredite la maternidad; que exista un vínculo matrimonial entre la madre y el hombre a quien se le atribuye la paternidad; y que el nacimiento ocurra dentro de los ciento ochenta (180) días siguientes a la celebración del matrimonio y antes de los trescientos (300) días de éste haber sido disuelto. Gustavo A. Bossert, *Régimen legal de la filiación y patria potestad: Ley 23.264*, Editorial Astrea, 1987, págs. 39-40. **Al menos en términos jurídicos, el matrimonio confiere certeza a la paternidad.** *Almodóvar v. Méndez Román*, 125 D.P.R. 218, 236 (1990).

En el caso de autos, la señora Castro Torres contrajo matrimonio con el señor Rivera Ávila el 26 de agosto de 1989 y la

---

[39] **Por otro lado, conforme el Art. 114 del Código Civil, 31 L.P.R.A. § 114, "[i]gualmente es legítimo el hijo nacido dentro de los ciento ochenta días siguientes a la celebración del matrimonio, si el marido no impugnare su legitimidad".**

sentencia de divorcio fue emitida el 18 de mayo de 1990 y notificada por edicto el 18 de junio de 1990. El menor Julio Ángel Negrón Castro nació el 15 de marzo de 1990, es decir, vigente el matrimonio Castro-Rivera. De lo anterior se colige claramente que el menor está cobijado por la presunción de paternidad establecida en el Art. 113 del Código Civil, *supra*. **La referida disposición inviste legalmente al menor con el estado de hijo del señor Rivera Ávila**. A la luz de lo anterior, el caso de autos versa sobre la efectividad de la presunción de paternidad cuando existe una filiación contradictoria como consecuencia del reconocimiento llevado a cabo por un tercero.

Como previamente expusimos, la filiación también puede ser extramatrimonial. Ésta es aplicable a los hijos que nacen sin filiación presunta y puede obtenerse por dos (2) medios. El primero es mediante el reconocimiento voluntario de los padres y el segundo es mediante el reconocimiento forzoso, que surge como consecuencia de una sentencia judicial emitida en una acción de filiación. Serrano Geyls, *supra*, en la pág. 963. Dado que en el caso de marras el menor fue reconocido por el señor Negrón Soto, examinaremos las disposiciones pertinentes al reconocimiento voluntario, que hemos señalado como el medio más importante para establecer la filiación extramatrimonial. *Sánchez Encarnación v. Sánchez Brunet*, res. el 13 de julio de 2001, 154 D.P.R. _____ (2001), 2001 T.S.P.R. 107, 2001 J.T.S. 112.

"El reconocimiento es un acto jurídico formal, personalísimo y voluntario por el que una persona confiesa ser el padre de otra." Ignacio Sierra Gil de la Cuesta, *Comentario del Código Civil*, Tomo 2, Editorial Bosch, 2000, pág. 282. Además de ser personalísimo y voluntario, se caracteriza por ser un acto: puro,

porque no está sujeto a término o condición; irrevocable; formal y solemne, porque tiene que ser escrito, expreso y en acta de nacimiento, testamento u otro documento público; y que tiene carácter retroactivo en lo concerniente a sus efectos. Díez-Picazo y Gullón, *supra*, en la pág. 262; Serrano Geyls, *supra*, en las págs. 990-991. El efecto del reconocimiento es la constitución del estado de hijo.

> De por sí no es un acto reconocedor de derechos y obligaciones. Éstos no se conceden ni se imponen por la voluntad del padre, que sólo tiene el poder autónomo de dar vida a la declaración de paternidad. Es la ley la que lo considera como causa de determinados efectos jurídicos, atribuyendo a ese status las prerrogativas que define. *Ocasio v. Díaz*, *supra*, en la pág. 701.

De acuerdo con los hechos previamente reseñados, el señor Negrón Soto acudió al Registro Demográfico el 20 de marzo de 1990 y presentó los documentos para que se inscribiera al menor Julio Ángel Negrón Castro como hijo suyo. Tal reconocimiento fue llevado a cabo por el señor Negrón Soto bajo la creencia de que el menor era su hijo biológico, pues había sostenido una relación sentimental con la madre de éste previo al divorcio de los señores Castro-Rivera, luego de que el esposo de la señora Castro Torres se trasladara a los Estados Unidos. **En síntesis, mientras el menor ostentaba legalmente el estado de hijo del señor Rivera Ávila, en virtud de la presunción de paternidad por razón del matrimonio, fue inscrito como hijo del señor Negrón Soto a través de un reconocimiento voluntario.** A continuación examinaremos el procedimiento y los efectos de la inscripción de un reconocimiento en el Registro Demográfico.

B.   El Registro Demográfico y los efectos de la inscripción

El Registro Demográfico es una institución que funge como medio de constatación de los hechos relevantes que afectan a las personas.  Su finalidad es hacer constar "públicamente la versión oficial sobre la existencia, estado civil y condición" de los sujetos de derechos.  Eduardo Vázquez Bote, *Derecho privado puertorriqueño*, Tomo III, Equity Publishing Company, 1992, § 11.1, pág. 400.  La Ley del Registro Demográfico, Ley Núm. 24 de 22 de abril de 1931, según enmendada, 24 L.P.R.A. §§ 1041 *et seq.*, reglamenta las inscripciones de los nacimientos, defunciones y matrimonios que tengan lugar en Puerto Rico.

De acuerdo con la recién citada disposición, el documento de declaración de un nacimiento[40] debe presentarse al Registro Demográfico dentro de los diez (10) días de dicho nacimiento.  24 L.P.R.A. § 1131.  Cuando el nacimiento ocurra en un hospital, asilo, penitenciaría o cualquier otra institución, el administrador de dicha institución está obligado a realizar la declaración del nacimiento.  Por otro lado, si el nacimiento ocurre fuera de una institución, podrán hacer la declaración el médico, el padre, madre o el pariente más cercano, siempre que sea mayor de edad.  24 L.P.R.A. § 1132.  Ni la legislación ni el Reglamento del Registro Demográfico Núm. 0316 de 19 de septiembre

---

[40] **La declaración de un nacimiento se lleva a cabo en el Formulario RD-78 del Registro Demográfico.  En primer lugar, la persona que atendió el parto debe indicar su nombre, dirección y debe firmar el documento.  Posteriormente, el formulario se lleva al Registro donde un funcionario transcribe los datos provistos por el informante.  Entre los datos requeridos se encuentran: los nombres y lugar de nacimiento de los padres; nombre del niño; la hora, lugar y fecha de nacimiento; fecha de registro; el nombre, dirección, firma y relación entre el informante y el niño que será inscrito.  Cabe destacar que el informante es quien firma tal documento ya que el formulario no requiere la firma de los padres.**

de 1957 (en adelante Reglamento) prohíbe que un tercero lleve a cabo la declaración de un nacimiento en el Registro Demográfico.

Para complementar las anteriores disposiciones, el Reglamento dispone, en lo pertinente, que para llevar a cabo una inscripción:

> (1) Los documentos en que consten los actos de emancipación, **reconocimiento**, legitimación, adopción y en general **cualquier acto jurídico que afecte el estado civil** o la condición social de la persona inscrita, serán entregados o remitidos por los interesados al Jefe del Negociado de Estadística Demográfica del Departamento de Salud de Puerto Rico, encargado del Registro General Demográfico de Puerto Rico, quien expedirá recibo de dicho documento o documentos a su presentación; y luego de estudiados convenientemente procederá a archivarlos definitivamente y a poner en ellos, así como en los certificados a que se refieran, las correspondientes notas de mutua referencia, instruyendo al registrador local correspondiente que haga idéntica anotación al margen del duplicado del certificado en cuestión que queda en su poder como récord local. Reglamento, *supra*, § 1071-4. (Énfasis suplido.)

De lo anterior surge que el procedimiento de inscripción en el Registro Demográfico de Puerto Rico es uno sencillo, que no exige calificación alguna de los funcionarios del Registro Demográfico, sino que se lleva a cabo esencialmente con la entrega de los documentos y datos pertinentes al acto cuya anotación se pretende y que cualquier persona puede presentar al Registro Demográfico los documentos antes mencionados, puesto que ni la Ley ni su Reglamento prohíben que un tercero realice la gestión. Así, los padres pueden delegar en algún amigo la presentación al Registro Demográfico del Formulario RD-78 para que se proceda a la inscripción del nacimiento de su hijo o hija. Por otro lado, de un examen de las normas referentes al Registro Demográfico notamos que no se requiere que sus funcionarios hagan una calificación en términos jurídicos de los efectos que emanan de los documentos que ante ellos se presentan. Éstos meramente deben cotejar los

documentos para verificar si se han provisto todos los datos necesarios para proceder a la inscripción solicitada. Además, deben asegurarse que en el formulario se hagan constar datos, tales como el lugar y la fecha del nacimiento, el sexo de la criatura, los nombres y apellidos de los padres y su residencia.

Los funcionarios del Registro Demográfico son legos y sus puestos no requieren de éstos requisitos de especialización. Ni la Ley ni el Reglamento disponen para la calificación de los documentos presentados para inscripción. Vázquez Bote, *supra*, en la § 11.3, pág. 404. A tenor con lo anterior, este Foro ha resuelto que "[l]as inscripciones del Registro Demográfico no constituyen de por sí una declaración incontrovertible de un hecho". *Meléndez Soberal v. García Marrero*, res. el 12 de septiembre de 2002, 158 D.P.R. _____ (2002), 2002 T.S.P.R. 119, 2002 J.T.S. 127; *Tosado v. Tenorio*, *supra*, en las págs. 865-866.

En Puerto Rico la inscripción en el Registro Demográfico tiene el efecto de establecer *prima facie* la existencia o inexistencia de un hecho que tiene repercusiones en el estado civil de las personas. 24 L.P.R.A. § 1237. No obstante, la inscripción de un hecho o la ausencia de tal inscripción no determina su existencia. En Puerto Rico el Registro Demográfico no es de carácter constitutivo de derechos, como lo es, por ejemplo, el de España bajo ciertas circunstancias. Sobre el particular, indica el profesor Díez-Picazo, refiriéndose a la inscripción en el Registro Civil español:

> Las inscripciones, como principio general, son declarativas respecto del estado civil. No hacen más que publicar o declarar su existencia o modificación, que se opera al margen del Registro. Cuando la inscripción es requisito necesario para la adquisición de ese estado civil, en supuestos excepcionales, posee carácter constitutivo. Así ocurre en el Código Civil

con la adquisición de la nacionalidad española por opción, carta de naturaleza o residencia (art. 23 C.c.); la recuperación de esa misma nacionalidad (art. 26 C.c.); y las declaraciones sobre vecindad civil (arts. 14 y 15 C.c.). Son también constitutivas las autorizaciones de cambios de nombres o apellidos (art. 218 R.R.C.). Díez-Picazo y Gullón, *supra*, Vol. I, en la pág. 318.

De la cita anterior surgen las diferencias entre los asientos que son inscribibles en el Registro Civil español y el Registro Demográfico nuestro, razón por la cual en España algunas inscripciones tienen carácter constitutivo por vía de excepción. Sin embargo, de acuerdo con nuestra Ley del Registro Demográfico, las inscripciones tienen un valor probatorio y sirven para un propósito informativo.

> En Derecho puertorriqueño, desde la aprobación de la Ley de Registro Demográfico vigente, parece ser mucho más aceptable la doctrina que no reconoce a las actas del Registro valor especial alguno. Es verdad que el art. 250 del Código Civil establece "que las actas del registro serán prueba del estado civil"; pero no es menos cierto que la vigencia de dicho precepto puede considerarse impedida de realizarse por virtud de la vigente *Ley del Registro Demográfico*. Consciente el legislador, al parecer, de las deficiencias instauradas por la Ley vigente, desconoce él mismo un serio valor al contenido de los asientos registrales, que sólo son prueba *prima facie* (art. 38, párrafo primero, de la Ley); razón por la cual la prueba que surja del contenido de los asientos registrales puede ser contradicha por otra prueba que llev[e] al ánimo del juzgador la convicción de que la circunstancia que se trata de acreditar es otra y no la que allí se consigna. Vázquez Bote, *supra*, en la § 11.6, pág. 411. (Énfasis en el original.)

Este Tribunal implícitamente ha negado el carácter constitutivo de una inscripción en el Registro Demográfico. En *Meléndez Soberal v. García Marrero*, *supra*, tuvimos que determinar si el incumplimiento con el requisito de inscripción de un certificado de matrimonio en el Registro Demográfico invalidaba la unión celebrada entre los contrayentes. Allí resolvimos que el hecho de que "no se cumpliera con el deber ministerial de llevar

los documentos al Registro Demográfico para la inscripción de dicho matrimonio, no t[uvo] el efecto de invalidar el matrimonio que [había sido] previamente celebrado". Señalamos, además, que "[a]unque el certificado de matrimonio expedido por el Registro Demográfico tiene un gran valor probatorio siendo prueba "*prima facie*" de la existencia de un matrimonio, una certificación negativa de casamiento expedida por el Registro Demográfico no prueba, por sí sola, la inexistencia del mismo". (Énfasis en el original.) Del anterior curso decisorio surge que **la inscripción en el Registro Demográfico no es constitutiva de derechos, por ende una persona puede ostentar determinado estado civil sin que sea necesario que para que su existencia sea reconocida por el Derecho, conste inscrita.**

Con este marco doctrinal sobre las formas de adquirir el vínculo filiatorio en nuestro ordenamiento y los efectos de la inscripción en el Registro Demográfico, debemos resolver el efecto que tiene el reconocimiento voluntario de un menor por un tercero cuando dicho menor está cobijado por una presunción de paternidad al nacer vigente un matrimonio.

C.   Dicotomía entre el reconocimiento voluntario y la presunción de paternidad

Como previamente indicamos, la presunción de paternidad opera como una investidura legal por razón del nacimiento vigente la unión matrimonial. El ordenamiento jurídico presume entonces que el hijo habido durante el matrimonio es hijo del esposo de la madre. A contrario sensu, el reconocimiento voluntario no opera automáticamente, sino que es necesario un acto afirmativo, por escrito, expreso, mediante acta de nacimiento, testamento u otro

documento público, de la persona que cree ser el padre biológico del menor.

Ahora bien, puede ocurrir que el hijo de una mujer casada sea reconocido por otro hombre, planteándose de esta forma un conflicto entre la presunción de paternidad del marido y el vínculo filial con el tercero que surge de la inscripción. Dentro del amplio espectro de posibilidades, ello podría ocurrir, entre otras circunstancias, por existir una relación adulterina entre la madre y el tercero, por la inseminación artificial de la madre sin el conocimiento de su marido o porque un tercero lleve a cabo una inscripción errónea de mala fe.

Existen distintas vertientes doctrinales sobre este conflicto para establecer la filiación del hijo. Mientras un sector aduce que el Registro Demográfico tiene carácter constitutivo, otro sector le adjudica un efecto declarativo. Los postulados expuestos por cada sector se fundamentan en las disposiciones legislativas que rigen en los distintos países. Examinemos las distintas vertientes sobre este particular.

El profesor Sierra Gil de la Cuesta, al comentar sobre la actuación de la Dirección General del Registro Civil y del Notariado español, comenta que una vez acreditado el matrimonio de la madre, entra en vigor la presunción de paternidad del marido cuya eficacia se reconocerá mientras no se presente prueba en contrario. "[L]a filiación matrimonial en las condiciones del art. 116 del Código [Art. 113 del Código Civil de Puerto Rico] **es una consecuencia que se deriva <u>automáticamente</u> de la Ley, y que <u>debe inscribirse</u>**, mientras no quede acreditada otra filiación contradictoria...." Sierra Gil de la Cuesta, *supra*, en la pág. 270. (Énfasis suplido.)

Igual solución provee el profesor Bossert aplicando la legislación de Argentina sobre esta materia. De acuerdo con el distinguido jurista:

> La atribución de la paternidad al marido de la madre, no depende de la voluntad de las partes; ocurre por imperio legal, cuando se ha establecido el vínculo de hijo con la mujer casada; **no es un acto ni una consecuencia que pertenezca al poder dispositivo de los sujetos....**
>
> . . . .
>
> **[N]o obstante el reconocimiento hecho por un tercero, podrá el marido solicitar que se deje sin efecto la mención del padre que se atribuyó al inscripto en el acta de nacimiento, prevaliéndose simplemente en la presunción [de paternidad].** Bossert, *supra*, en las págs. 40-42. (Énfasis suplido.)

Según el citado tratadista, cuando confluyen la presunción de paternidad y la inscripción de un reconocimiento voluntario, **el título de inscripción es un obstáculo formal que no altera el vínculo legal establecido por la presunción.**

Por otro lado, en Puerto Rico, el profesor Raúl Serrano Geyls explica lo siguiente sobre este conflicto para determinar la filiación de un menor:

> En los casos de inscripción de los hijos matrimoniales pueden darse las siguientes alternativas: inscripción por ambos cónyuges; o sólo por la mujer casada en la que indica el nombre del marido; o por la mujer casada sin informar el nombre del marido; o por la madre que se hace pasar como mujer soltera y un tercero reconociente; o sólo por el tercero sin mencionar el nombre de la madre ni el del marido. Es obvio que las últimas cuatro alternativas constituyen un ataque a la presunción de la paternidad del marido pero no deberían aceptarse como prueba concluyente porque la presunción se origina en la ley. <u>**El estado civil de hijo de matrimonio depende del nacimiento dentro de los plazos establecidos por la ley y no de la inscripción registral.**</u>
>
> . . . .
>
> **Estimo que en P.R. el reconocimiento no debe aceptarse si el hijo tiene un estado civil determinado por la ley o la inscripción registral hasta que ese estado se impugne expresamente en los tribunales.** Serrano Geyls, *supra*, en la pág. 922. (Énfasis suplido.)

Otro sector de la doctrina aduce que aunque el menor nazca vigente el vínculo matrimonial, si es reconocido por un tercero, prevalece tal reconocimiento. A tales efectos, este sector niega eficacia jurídica a la presunción de paternidad porque ésta queda derrotada con el reconocimiento y la correspondiente inscripción. A esta posición se adscribió la mayoría de este Tribunal al resolver que en la presente controversia la presunción "perdió todo efecto jurídico, o nunca adquirió tal efectividad, en vista de que el menor no fue inscrito como hijo de Rivera Ávila y Negrón Soto lo reconoció como hijo suyo inscribiéndolo como tal en el Registro Demográfico. <u>Ello es así debido a que la presunción de paternidad no adquiere efectividad jurídica mientras no se concrete en una inscripción registral</u>". (Énfasis en el original.)

Para sustentar su conclusión, la mayoría cita a los tratadistas Carlos A.R. Lagomarcino y Marcelo U. Salerno, *Enciclopedia de Derecho de familia*, Tomo II, Editorial Universidad, 1992, pág. 367, donde éstos, al comentar la legislación argentina, señalan que:

> [H]ay que privilegiar la inscripción registral si la presunción de paternidad no ha sido trasladada a ese plano, cuando cualquier interesado podía haberlo hecho.
>
> Al respecto, debe señalarse que nada impide que una mujer reconozca un hijo sin poner de manifiesto su estado civil y tampoco hay obstáculo en que un hombre reconozca como propio a un hijo que no tenga todavía paternidad acreditada en el Registro Civil.
>
> Por lo tanto, para que la presunción de paternidad adquiera efectividad jurídica es necesario que se haya concretado en una inscripción registral.
>
> En tanto ello no ocurra, carece de efectos frente a terceros.
>
> Respalda esta postura el art. 263 del Cód. Civil, tanto en su redacción original, como en la que surge luego de la ley 2393 cuando dice que la filiación legítima se

probará por la inscripción del nacimiento en el Registro Civil donde exista y, a falta de éste, por la inscripción en el registro parroquial y por la inscripción del matrimonio en el Registro Civil desde la vigencia de esta ley y en los parroquiales antes de ella.

De una lectura de la cita anterior puede notarse que no existe en nuestro Derecho positivo disposición alguna semejante al Art. 263 del Código Civil de la República Argentina, que establezca que la presunción de paternidad se probará mediante la inscripción en el Registro Demográfico. Por el contrario, reiteradamente nuestra jurisprudencia ha reconocido que **la presunción de paternidad opera por virtud de ley** y no hemos requerido la inscripción para que ésta advenga eficaz. *Sánchez Encarnación v. Sánchez Brunet*, *supra*; *Calo Morales v. Cartagena Calo*, *supra*, en la pág. 117; *Almodóvar v. Méndez Román*, *supra*, en la pág. 248; *Ramos v. Marrero*, 116 D.P.R. 357 (1985); *Moreno Álamo v. Moreno Jimenez*, *supra*, en la pág. 379.

Conviene indicar, por otro lado, que aunque no encontramos en nuestra jurisprudencia una situación de hechos similar a la presente, sí nos hemos pronunciado anteriormente sobre la posibilidad de que un hijo cubierto por la presunción de paternidad sea reconocido por un tercero. En *Ocasio v. Díaz*, *supra*, en la pág. 733, nota al calce 10, refiriéndonos a la facultad de un padre biológico para reconocer a su hijo frente a la presunción de paternidad establecida en el Art. 113 del Código Civil, *supra*, señalamos a manera de *dictum* que "[c]omo padre de ese hijo debería prevalecer el que de ellos primeramente lo inscribió en el Registro Demográfico". Sin embargo, esta **solución simplista de la carrera al Registro** fue criticada en *Ramos v.*

*Marrero*, *supra*, en la pág. 369, donde refiriéndonos al *dictum* de Ocasio v. Díaz, *supra*, dijimos:

> Algunas de las expresiones nuestras en ese dictum han sido criticadas desfavorablemente. Véanse: A. Calderón, *La Filiación en Puerto Rico*, 2da ed., San Juan, Ed. Col. Abogados, 1978, pág. 152 y ss.; y A. Blanco, *Sobre Reforma del Código Civil*, 43 Rev. Jur. U.P.R. 103, 127-132 (1974). Consideran estos autores que la paternidad no puede depender en estos casos de quién inscriba primero. Calderón señala que la teoría descansa en la premisa de que si un hombre desea reconocer al hijo de una mujer casada, es porque indudablemente es su hijo biológico, y que ello no es necesariamente así. No obstante, ambos autores coinciden en que el procedimiento a seguir debe ser que el padre biológico impugne primero la presunción de paternidad que la ley le otorga al marido.

Cónsono con estos pronunciamientos, en la citada decisión reconocimos legitimación activa a un alegado padre biológico para impugnar la presunción de paternidad del marido. La prueba de impugnación puede consistir de cualquier medio idóneo y concluyente que demuestre la imposibilidad de la paternidad del marido. *Moreno Álamo v. Moreno Jimenez*, *supra*, en la pág. 387.

Nuestras decisiones previas nos llevan a la conclusión de que este Tribunal reiteradamente ha reconocido la presunción de paternidad de los hijos que nacen de un vínculo matrimonial como una que opera por virtud de la ley, independientemente de la voluntad de los sujetos. Apliquemos las normas expuestas a los hechos del presente recurso.

### III

El menor Julio Angel Negrón Castro nació mientras su madre se encontraba legalmente casada con el señor Rivera Ávila. Por investidura legal, dicho menor es hijo del entonces esposo de su madre, el señor Rivera Ávila. Es menester recordar que nuestra jurisprudencia reiteradamente ha reconocido la eficacia automática

de la presunción de paternidad.  A tales efectos es que se ha hecho necesario reconocerle legitimación a los padres biológicos y a los hijos para buscar su verdadera filiación y, además, se les ha reconocido a los padres legítimos la capacidad para impugnar la presunción de paternidad.

No obstante ser el menor hijo del señor Rivera Ávila por virtud de ley, fue reconocido voluntariamente por el señor Negrón Soto, quien lo inscribió en el Registro Demográfico como su hijo.[41] ¿Prevalece dicho procedimiento de inscripción ante un estado filiatorio que opera por mandato legal?  Respondemos en la negativa.

Como previamente expusimos, el Registro Demográfico en Puerto Rico sirve a un propósito informativo y de constatación de algunos actos que afectan el estado civil de las personas, tales como el nacimiento, la muerte y el matrimonio.  No se le reconoce al Registro un efecto constitutivo en vista de que sus constancias no necesariamente reflejan la realidad que debe ser protegida por el Derecho.

Por otro lado, del procedimiento de inscripción establecido en el Reglamento surge que se trata prácticamente de una mera entrega por cualquier persona de documentos y datos a los funcionarios del Registro Demográfico, luego de la cual no se exige calificación.  Reconocerle efecto constitutivo a la inscripción de un nacimiento hecha por un tercero cuando el hijo nace durante la vigencia de un matrimonio, como hizo la mayoría de

---

[41] **Resulta necesario indicar que los funcionarios del Registro Demográfico no deberían proceder a llevar a cabo una inscripción si de los documentos que ya constan en el Registro surge que la inscripción solicitada sería contradictoria a los datos previamente inscritos.**

este Tribunal, equivale a la incorporación de un mecanismo administrativo ex parte para impugnar la paternidad, despojar a un menor de su legitimidad e imputarle a la madre una relación adulterina. No puede adjudicarse a un procedimiento tan sencillo y desreglamentado, que es llevado a cabo por funcionarios a los que no se les exige preparación especializada, tan importantes consecuencias jurídicas. Adoptar esta posición tendría el efecto de socavar la filiación presunta a la que por ley tienen derecho los hijos habidos en el matrimonio.

Conviene recordar las palabras del Juez Asociado señor Belaval en su opinión disidente de *Ex parte Otero*, 77 D.P.R. 754, 763 (1954), citada con aprobación en *Vélez Román v. Rodríguez Franqui*, 82 D.P.R. 762, 774-776 (1961):

> Desde el momento que el contenido del documento, sólo constituye evidencia prima facie del hecho del nacimiento y del estado civil del inscrito, es indudable que en virtud de la inscripción de un nacimiento no se declara ningún hecho filiatorio que sea irrevocable o valedero contra el interés público o contra el interés de terceras personas, y no tenemos por qué abrigar el temor que cualquiera inscripción, o cualquiera rectificación, corrección, adición o enmienda de una inscripción anterior en el Registro Demográfico, equivalga a una sentencia declaratoria de filiación.[42]

---

[42] Si nos dejamos guiar por la norma acogida por la mayoría, ¿cómo procederemos cuando nos encontremos ante un reconocimiento hecho por un tercero, de mala fe, que alegue ser padre de un niño nacido de un matrimonio? ¿Reconoceremos el carácter constitutivo de tal inscripción? ¿Se convertiría la mujer casada automáticamente en adúltera a la luz del carácter constitutivo de la inscripción?

Por otro lado, la solución a la que llega la mayoría no toma en consideración que cabe la posibilidad de que un tercero inscriba como suyo al hijo de un matrimonio. En tal caso, la pareja podría enterarse de que su hijo biológico está inscrito como hijo de un tercero años después cuando solicite una copia del certificado de nacimiento del hijo. ¿Reconoceremos efectos constitutivos a dicha inscripción? Las decisiones de esta Curia merecen un razonamiento más profundo. **No podemos avalar que la filiación de un niño esté supeditada a la carrera contra el tiempo para llegar primero a inscribir el nacimiento en el Registro Demográfico.**

(Continúa . . .)

En el presente recurso el menor debió haber sido inscrito con el apellido de su presunto padre, el señor Rivera Ávila.[43]  A la luz de lo anterior, estimamos que erró el Tribunal de Circuito al determinar que el señor Rivera Ávila tenía legitimación activa para impugnar el reconocimiento ya que lo procedente era que el señor Rivera Ávila solicitara la rectificación del certificado de nacimiento de su hijo.[44]  Ante estas circunstancias, no podía aplicarse al señor Rivera Ávila el término de caducidad establecido para instar una acción de impugnación de reconocimiento, ya que para todos los efectos jurídicos el menor siempre se ha presumido hijo suyo.

Ahora bien, el Art. 31 de la Ley del Registro Demográfico, *supra*, 24 L.P.R.A. § 1231, dispone que no podrá hacerse rectificación, adición o enmienda alguna que altere sustancialmente un certificado ya registrado, salvo cuando exista orden del tribunal al respecto.  Para obtener dicha orden el

---

**Más aún, la decisión emitida por la mayoría del Tribunal constituye la legitimación de un daño moral al afectarse la reputación de muchas mujeres, y el bienestar emocional de los esposos, hijos, hijas y familias con el reconocimiento de efectos constitutivos a la inscripción en el Registro Demográfico.  Se pretende legitimar el daño que un tercero haga mediante la inscripción cuando por virtud de ley el hijo habido en el matrimonio goza de una filiación presunta.**

**[43]  Si al tiempo del nacimiento el señor Negrón Soto tenía la creencia de que el menor era su hijo biológico, debió instar una acción de impugnación de legitimidad dentro del término de caducidad de tres (3) meses luego de la inscripción del nacimiento, si se encontraba en Puerto Rico, o dentro de los seis (6) meses del nacimiento, si se hallaba fuera de Puerto Rico. Art. 117 Código Civil, *supra*.**

**[44]  Es menester recordar que aunque en nuestro ordenamiento el Derecho es rogado, ello no nos impide conceder el remedio procedente en la situación particular que se encuentre ante la consideración del foro judicial.  Los tribunales siempre concederán lo que proceda en Derecho, que puede o no coincidir con lo que se solicita.**

interesado deberá presentar una solicitud ante el tribunal, juramentada y acompañada de la prueba documental en la cual se fundamenta la solicitud. Por su parte, el Reglamento, *supra*, § 1071-19, dispone que después de efectuada una inscripción, no podrán hacerse cambios, borraduras o alteraciones sin el debido proceso de ley. Lo anterior significa que deben incluirse en el asunto todas las partes que podrían quedar afectadas con la rectificación. *Meléndez Soberal v. García Marrero*, *supra*.

En virtud de lo antes expuesto, y a la luz de los hechos no controvertidos a los efectos de que el menor nació el 15 de marzo de 1990, vigente el matrimonio Castro-Rivera, que quedó disuelto mediante sentencia de divorcio emitida el 18 de mayo de 1990, por lo cual al momento del nacimiento automáticamente adquirió el estado de hijo del señor Francisco Rivera Ávila como consecuencia de la presunción de paternidad que opera por virtud de ley, revocaríamos la decisión emitida por el Tribunal de Circuito y ordenaríamos al Registro Demográfico que rectifique el certificado de nacimiento del menor para que éste quede inscrito a nombre de su presunto padre. Luego devolveríamos el caso al foro de instancia para que continúe la acción de alimentos de conformidad con lo aquí resuelto.

MIRIAM NAVEIRA DE RODÓN
Jueza Asociada